## Walker *against* Simpson.

Where the husband disagreed with his wife and separated from her, and the state of feeling between them was hostile, and he was absent in a distant State, the mere circumstance of the wife's having possession of the husband's bond does not cause a presumption that he delivered it to her with authority to receive the interest upon it.

Nor is such presumption raised by the husband's having turned her away without reasonable cause and without providing the means of support.

The husband is not liable for money lent to the wife to procure necessaries, unless at his request; and it is the same as to an infant.

But in equity, if a debtor to the husband has paid money to the wife and she used it for necessaries, where the husband turned her away without cause, the debtor is permitted to stand in the place of the creditor and defalk the money advanced in a suit for the debt.

Unless it be shown the husband turned away his wife without cause, he will not be liable for necessaries furnished her.

ERROR to the Common Pleas of *Bucks* county.

This was a *scire facias* issued by John Walker against Robert Simpson on a mortgage for $2000, dated April 1st 1839, and payable on the 1st April 1840. The dispute was as to certain credits of interest endorsed on the bond accompanying the mortgage. One of these endorsements was a receipt for $60 dated April 1st 1841, the other a receipt for $60 dated April 19th 1841, both signed by Beulah Walker, wife of the plaintiff. The plaintiff denied the defendant's right to make these payments to his wife. The defendant having given in evidence the bond, proved by David Booz the payment to the wife of the first sum, and her handwriting to the second receipt. She had possession of the bond. John Walker was then in the West. On his cross-examination the witness stated Walker was not living with his wife; she lived at the house of witness, whither she came on foot from her husband's in the summer of 1840. She said he turned her out. He went to the West, and she remained at witness's house. Did not know how she got possession of the bond. It was well known they were separate. Knew of no application by him for her return. The Friends of Buckingham meeting had interfered to get them together, but John Walker would not accede to any proposition. Walker came to see her at the house of witness. When he went to the West he rented out his farm. On his return he held a vendue.

Another witness testified he was present when the last receipt was given and saw the money paid. Being cross-examined, he stated that nothing was said by either party about her right to receive it. The receipt was given at the defendant's house in Solebury,

[Walker v. Simpson.]

about 3 miles from Walker's. Witness took her there. He lived in Bristol township, and was a brother-in-law of hers. The defendant made no inquiry about her right to receive it. She was two weeks at witness's house before that time. He did not know at that time that she had applied for a divorce from bed and board.

The plaintiff then gave in evidence a subpœna sur divorce by Beulah Walker, by her next friend Merrick Reeder, against John Walker, issued to December term 1840, and the sheriff's return defendant not found. An alias subpœna sur divorce between the same parties to February term 1841, and sheriff's return not found in bailiwick. A pluries subpœna sur divorce between the same parties to April term 1841, and sheriff's return "that he caused the annexed advertisement to be inserted four successive weeks in the Doylestown Democrat, a paper of the county, immediately preceding the return day of the within writ." The appointment by the court of an examiner on the 26th April 1841. The plaintiff further gave in evidence the following paper attached to the writ:

Beulah Walker by her next friend Merrick Reeder Esq. *v.* John Walker. Subpœna sur divorce, No. 16, April term 1841.

To the prothonotary of the Court of Common Pleas of Bucks county:

I hereby withdraw the libel for divorce in the above case, and discontinue all proceedings under the same pursuant to agreement, and direct said prothonotary to make the entries upon his docket accordingly.

(Signed)                    MERRICK REEDER.

June 15, 1841.

I assent to the above.

(Signed)                    BEULAH WALKER.

The following is the agreement referred to:

" The proposition is accepted in this form: unconditionally he will receive her at his house and treat her as his wife; but if she will put an end to the legal proceedings she has instituted against him, he will take her home at once and treat her as his wife. By putting an end to the legal proceedings is meant discontinuance of the present proceedings and withdrawal of the libel. And further, he says that certain stories that have been put in circulation are untrue.

In answer she agrees to put an end to the legal proceedings she has instituted against him, and withdraw the libel on his taking her home at once and treating her as his wife."

A witness testified they rode home together. Evidence was then given of a subpœna sur divorce between the same parties to September term 1841.

The court charged the jury as follows:

These payments are disputed, and the plaintiff refuses to allow them on the ground:

1. That if you believe that John Walker and his wife Beulah were living separate and apart at the time that she received the interest on the mortgage and gave the receipts, then no presumption of her being the agent of the husband arises, and it was the duty of the defendant to have given evidence that she was authorized by the husband to receive the interest and give the receipt, before he can be entitled to a credit for such payment in this suit.

2. That the payment of interest to Beulah after she had instituted proceedings to obtain a divorce from her husband, and while said proceedings were still pending, and in the absence of all evidence showing an authority given to her by her husband, was a mispayment, and will not discharge the defendant from his liability to repay the money to the plaintiff.

3. That the evidence in the case is not sufficient to establish the agency of the wife, and therefore the payment to the wife cannot be allowed by the jury.

You will observe that so far as the evidence in the cause which led to the separation, it is that he turned her out of his house. Is there any evidence that he made any provision for her? None that the court can discover. How did she get this bond? You are not to presume without evidence that she stole it, or fraudulently obtained it. Would it not be a more rational presumption that before he went off to the West he left the bond with her to receive the interest for her maintenance and support, to clothe and feed her as his wife, whom he promised to support and cherish, and promised it before his God. The husband, says Father Reeves, is bound sometimes by the contracts of his wife, when he would not be bound if it were not for the peculiar circumstances of his family. If the husband go to foreign parts upon business which detains him for years, there necessarily resides in the wife a more than ordinary power to bind her husband by her contracts in providing for his family and managing his domestic concerns. See *Reeves's Dom. Rel.* 80, 81. The husband is bound by his wife's contracts for necessaries for herself when he refuses to provide them. His consent is not necessary, and it can never be presumed in the law when he refuses to provide them. If he should turn her out of doors and forbid all mankind from supplying her with necessaries, yet he will be bound to fulfil her contracts for necessaries. The case is the same if she depart from her husband with reasonable cause and refuses to cohabit with him. If she depart without reasonable cause, he is not liable on her contracts for necessaries, unless he refuses to receive her in his house again and there maintain her. The only evidence we have with respect to her leaving her husband's house that the court can discover is the answer of Booz to a question put by the plaintiff, that her husband turned her out of doors. Was this sum necessary for her? There

[Walker v. Simpson.]

is no evidence that she created any debt. If it was necessary, we think the burthen of proof would be on the husband to show. We have no evidence that she was the agent of her husband, unless it could be presumed from the fact of her having the bond in her possession. We do not think it necessary to answer the plaintiff's points further, believing that they are answered so far as they apply to this cause. After the charge was nearly concluded, the plaintiff requests us to instruct you that in the absence of evidence that the money was necessary for the support of the wife in her condition in life, no credit can be given on the ground that the money was necessary for her support. The court instructed the jury that as there was no evidence that the husband had made any provision for her, and if the jury believed the $120 of interest received on the bond was necessary for her support according to her condition, then the proof lay on the husband to show he had made provision for her according to his condition in life. That as he had not shown he made any provision for her or paid a cent for her, the jury would determine whether this payment was proper and necessary for her support according to the condition in life of the husband. If this was not necessary for her, it was for the husband to show it.

The plaintiff excepted to the charge.

The jury rendered a verdict for the plaintiff, deducting the credit claimed by the defendant. The plaintiff assigned the following errors:

1. The court erred in not giving a distinct answer in their charge to the jury on the three first points of the plaintiff, and in not answering them affirmatively.

2. In charging the jury that as there was no evidence that the husband had made any provision for his wife, and if the jury believed the $120 of interest receipted on the bond was necessary for her support according to her condition, that the proof lay on the husband to show he had made provision for her according to his condition in life. That as he had not shown he made any provision for her or paid a cent for her, the jury would determine whether this payment was proper and necessary for her support, according to the condition in life of the husband; and if this was not necessary for her, it was for the husband to show it.

3. In not charging the jury that even if they believed that the husband had made no suitable provision for his wife, and that this money was received by her for the purpose of procuring necessaries, still the defendant was not entitled to a credit in this suit for the $120 paid to her.

*Ross,* (with whom was *J. Fox*), for the plaintiff in error, cited 1 *Clancy* 53; 1 *P. Wms.* 483; *Prec. Ch.* 502; 2 *Eq. Cas. Ab.* 125; 1 *Salk.* 387.

*Chapman,* for the defendant in error.

[Walker v. Simpson.]

The opinion of the Court was delivered by

KENNEDY, J.— The errors assigned in this case present two questions for consideration. First, was any evidence given on the trial of the cause in the court below, tending to prove that the wife of the plaintiff was authorized by him to receive the interest paid to her by the defendant on the bond in suit? Secondly, if not, was the defendant justifiable in paying the same to her under the particular circumstances which seem from the evidence to have existed at the time? With a strong desire to answer the first question in the affirmative, I have scanned the testimony, but must confess that I have been unable to discover any going to show that an authority was given by the plaintiff to his wife to receive the interest paid to her, or tending even to prove circumstances or facts from which such an authority might reasonably be inferred. On the contrary, it appears to me that the evidence given tends very strongly, if not conclusively, to prove the contrary. The only circumstance proven, not incompatible with such authority, is her having the possession of the bond. But as it was also proved that a previous disagreement and separation had taken place between the plaintiff and his wife, and that he was absent on an excursion to the State of Indiana at the time when she had the bond and the interest was paid to her on it, it may be readily conjectured that she in his absence found access to his papers, and possessed herself of the bond without his consent. The state of feeling on the part of the plaintiff towards his wife at the time, as shown by the evidence, would seem to repel all presumption of his having been disposed to place anything in her power, or to favour her in any way whatever. The court, therefore, erred in leaving it to the jury to decide the first question in the affirmative, without any evidence to warrant their doing so.

It remains now to consider the second question, whether the circumstances attending the wife at the time were such as to warrant or justify the defendant in paying any money on the bond to her. It is alleged that the plaintiff turned his wife away without reasonable or just cause, and, for aught that was shown, without providing or furnishing her with the means of supporting herself; and this being the case, the defendant was justified in paying her the money to enable her to procure necessaries. The court below also appear to have taken up this notion, and instructed the jury " that as there was no evidence that the husband had made any provision for her, and that if the jury believed the $120 of interest received by her on the bond were necessary for her support according to her condition, then the proof lay on the husband to show he had made provision for her according to his condition in life. That as he had not shown he made any provision for her or paid a cent for her, the jury would determine whether the payment was proper and necessary for her support according to

[Walker v. Simpson.]

the condition in life of the husband.   If it was not necessary for her, it was for the husband to show it." We are of opinion that the instruction thus given to the jury cannot be sustained. Though it be true that a husband is bound to provide his wife with necessaries suitable to her situation and his condition in life, and if he abandons her or turns her away without reasonable or just cause and without any provision for her maintenance, he becomes liable for her necessaries and sends credit with her to that extent; yet he is not liable for money lent to her, unless it be done at his request, which must be averred and shown. See 2 *Kent's Com.* 146, (4*th ed.*), and the authorities there referred to. So in regard to an infant, if money be lent to him and he lay it out in necessaries, he is not liable for it at law. *Probart* v. *Krouth*, (2 *Esp. Rep.* 472 *n. per* BULLER, J.)   It is only for necessaries furnished to the infant that he can be made liable at law, and not for money lent or advanced, though he may have used it for the purpose of procuring necessaries; and so in the case of a husband, he can only be made liable at law for necessaries furnished to his wife, and not for moneys advanced or lent to her, notwithstanding she may have laid it out in procuring necessaries.   But in the present case it was not shown, except by the declaration of the wife, which was really no evidence of the fact, that the plaintiff turned his wife away without cause, or that he turned her away at all, without which the defendant would not have been justified in furnishing her even with necessaries on the credit of the plaintiff, much less in paying her money on his account; for all persons supplying either food, lodging or raiment to a married woman living separate from her husband are bound to make inquiries, and they give credit at their peril.   2 *Kent's Com.* 146, and the cases there referred to.   Neither was it shown to what use the money received by the wife was applied, whether to the procurement of necessaries or anything else; so that as far as the evidence given went, necessaries were not brought into view in this case at all.   Had the defendant supplied the plaintiff's wife with necessaries, *instead* of money, suitable to her situation and the condition of the plaintiff in life, and have shown this on the trial of the cause, together with the fact that the plaintiff had without sufficient cause compelled her to separate herself from him, he might have defalcated the price thereof from the amount of the bond.   Or if he had shown that under such circumstances the money advanced by him to her had been applied to the payment of such necessaries purchased for her use, he might upon principles of equity have been permitted to have stood in the place of the creditor for necessaries, and to have defalcated the money advanced from the amount due on the bond.   *Harris* v. *Lee*, (1 *P. Wms.* 483); *Prec. in Ch.* 502; 2 *Eq. Cas. Ab.* 135; *Earle* v. *Peale*, (1 *Salk.* 387); *Clancy on Mar. Wom.* 53; *Marlow* v. *Pitfield*, (1 *P. Wms.* 558).   All this is required of the party who undertakes to furnish the wife

[Walker v. Simpson.]

necessaries or money to pay for the same while in a state of separation from her husband.   For although the husband is to blame for having caused the separation, yet he is only chargeable at law for necessaries supplied to his wife at her request, and not with money lent or advanced to her, because money cannot be considered necessaries, which consist of food, lodging and raiment. But where the money lent or advanced has been applied to the payment of necessaries furnished to her, equity will put the party lending or advancing the money in the place of the party who supplied the necessaries.

Judgment reversed, and <em>venire de novo</em> awarded.