Mina Buttlar, complainant and appellant,

v.

Christian Buttlar, defendant and respondent.

[Filed March 6th, 1899.]

1. While separation between husband and wife in pursuance of mutual articles of agreement will not be enforced by the decree of a court of equity because against the policy of our laws, yet the court will not suffer a husband who has become possessed of the property of his wife by virtue of such agreement, to avail himself of his own wrong in order to free himself from the duty to maintain his wife.

2. In a suit in equity brought by a wife directly against her husband to enforce an agreement providing for payments of money by him for her separate support, founded upon a valuable consideration passing from the wife to the husband (and for a breach of the covenants of which agreement the wife, but for her coverture, could have enforced her remedy at law), the rules of evidence as administered in a court of law will be applied, and a defence which would have been overruled at law will not be entertained in equity.

3. Payments accruing under such an agreement will be decreed in equity in the wife's behalf not only on the general ground declared in *Aspinwall* v. *Aspinwall*, *4 Dick. Ch. Rep. 302*, but also for the reason that the husband's possession of the property of the wife for the purpose of her support, fastens upon him the obligation of maintaining her.

4. The agreement in this case construed to require the husband to satisfy out of the income of his business and property any deficiency of the rents collected by him from his wife's property to meet his agreed monthly payments to her.

5. The husband's offer to resume marital relations with his wife, set up by his answer, is not legally established when it rests alone upon .his uncorroborated testimony to the effect that he made no offer to her personally, but sent his friends to make such offer; nor can such offer, even if made *bona fide* and proved to have been duly communicated to her, defeat her right to recover in this suit the arrears of payments due her under the agreement in question, nor while the husband retains the exclusive use and control of the wife's property transferred to him by it.

On appeal from a decree advised by Vice-Chancellor Pitney, who delivered the following opinion:

The bill in this cause is filed by a wife against her husband to recover certain arrears of an annuity secured to her by his

personal covenant under seal.   That document is dated January 31st, 1894, and provided for the payment of $75 a month, commencing with the following month, but not mentioning any period that it should continue.   Payments under it were made and all pecuniary matters settled between the parties up to the 1st day of May, 1895.   Six more payments, to October, 1895, inclusive, were made in full.   In November, 1895, the defendant declined to pay more than $50, and made that payment each month up to the time of the hearing in May, 1897.   The bill was filed on April 15th, 1896.   At that time, by the terms of the agreement, there was due $25 on each of the months of November, December, 1895, January, February and March, 1896, and the prayer is for the arrears thereof shown.

The agreement is somewhat similar to that which was the foundation of the suit in *Aspinwall* v. *Aspinwall, 4 Dick. Ch. Rep. 302.*

[Here follows a recital of the terms of the agreement.]

The defendant took possession of the premises, has collected the rents, kept the premises in repair and kept down the interest ever since.   He has not paid all of the taxes for the reason, as he swears, and I think truly, that he has been unable to do so.

The defence is that, owing to the unexpected change in rental values, the bargain turned out to be a hard one for the husband; that the rents and profits have not been sufficient to pay the taxes, keep the premises in repair and insured, keep down the interest on the mortgages and also to pay the annuity to the wife.

The West Hoboken lots were covered by five tenement-houses, each containing two suites of rooms.   The Hoboken property was covered by a feed-store, which was and has ever since been occupied by Buttlar himself.

A fair but full rent for the feed-store is $35 a month, amounting to $420 a year.

At the date of the agreement the tenement-houses were all rented, except the flat which was occupied by the husband, at the rate of $33 a month for each house—that is, $17 for the

first floor and $16 for the second floor. At that rate the total income was $200 a month or $2,400 a year.

The West Hoboken premises were subject to a mortgage of $6,000, and the Hoboken feed-store to one of $3,000, amounting in the aggregate to $9,000. The interest on the $6,000 mortgage was at five per cent. and on the $3,000 mortgage at six per cent., making $480 annual interest. The ordinary taxes amount to $250 a year and the water rents on all the premises $75 more; the ordinary repairs to $200 and the insurance to $20, making a total fixed charge of $1,025 a year or a monthly payment of $85. If the houses had been occupied steadily by tenants who paid their rent at that rate, the husband would have made a small profit out of the transaction, for, while his fixed charges were about $1,025 a year and his wife's payments amounted to $900, or in all $1,925, his income, including his own rent, was $2,400, leaving him about $475. But he had a large arrear of assessments—$485 less $62.50—to pay, and he had also to meet the inevitable losses arising from tenants failing to pay and moving out and a part of the premises remaining unoccupied and unprofitable.

The income from rents began to fall off within a year or two after the contract was made, and in November, 1895, fell off so greatly that he then, as he above stated, reduced his payment to his wife from $75 to $50 a month. He was obliged to reduce the rent. From November, 1895, to April, 1897, inclusive, a period of eighteen months, the total cash income from the rents was $1,454, an average of $81 a month. During some of the months it fell as low as $35. Adding to this $15 a month for one of the flats occupied by the husband and $35 a month for the rent of the feed-store, we have a total of $131 a month. Deducting from that the fixed charge of $85 a month leaves a net income of $46 a month for the eighteen months. In the months of March and April, 1897, the rents had risen to $120 and $122 a month respectively, besides (as I understand the evidence) the rent of the portion occupied by the husband, which would make it in all about $175 a month.

The evidence satisfies me that $29 a month for each of the

Buttlar *v.* Buttlar.

five tenement-houses, or $145 a month for the whole, is a full price, and from that sum must be deducted something for the unavoidable loss from tenants unable to pay, or from actual vacancies. I am also satisfied that the loss of rent, occurring principally in the calendar year 1896, was owing to the depression in business, and the falling off of demand for dwellings, and not to any fault of the husband.

If, then, the defence of hard bargain is available to the defendant, I think it is made out. But for the circumstance that the relation of husband and wife exists between the parties, the remedy upon this contract would be an action at law in contract; and the suit is brought in equity simply on account of the technical rule that a husband or wife cannot sue each other at law. The question is whether the suit brought by the wife, by such a necessity, in a court of equity, is liable to equitable defences. It was called, but I think not properly, a suit for specific performance. I think it must be considered as a simple action for money due by contract. But having been brought into a court of equity, it seems to me that the defendant may avail himself of any equitable defence. He has not resorted to a cross-bill and asked to be relieved entirely from the effect of his covenant, but he does set up in his answer, and has proven, that he has offered to resume—and he did offer at the hearing to resume—marital relations with his wife, and he further offered, by his answer, to convey to her the West Hoboken property out and out, if she would relieve him from his covenant.

Each party, under protest by the court, entered into evidence as to which was to blame for the differences between them which led to the separation, but an examination of the evidence fails to show with any certainty which party was to blame. I think the probability is that the husband's statement of the cause is the true one, viz., that his wife insisted on collecting and appropriating to her own use all the rents, leaving him personally liable for taxes, assessments, repairs and insurance. The arrears of taxes and assessments due at the date of the agreement indicate this.

The question of the support of infant children did not enter

into the contract, the two children of the marriage being grown up and able and willing to take care of themselves. The wife and the husband appeared equally hale, hearty and able-bodied persons, and the wife as well able to support herself as the husband. The property in question stands in their joint names, the estate being the peculiar one arising out of the conveyance to husband and wife as such, and was the result of the joint labors of each. Taking all the facts and circumstances and the verbiage of the contract, I am satisfied that the amount of the payment fixed therein was based upon the net income of the property and not on the earning capacity of the husband, and that it was not understood or expected that the husband was to pay more than he received in rents, but that it was supposed by both that the rents would be ample to pay the wife the whole annuity and leave something over for the husband. Owing to the depreciation in the rental value of the property, not expected or anticipated by either party, the rents have been for a time insufficient to meet the payments. I am satisfied that the husband has done his best to make the payments and also keep down the fixed charges, and has been unable to do so. He exhibited his books of account of his personal business, and seemed desirous of making a complete expose of all his affairs.

For these reasons I come to the conclusion, contrary to my first impressions, that the complainant is not entitled to relief, and that her bill should be dismissed, without costs, and without prejudice to any future suit based upon non-payments from and after May 1st, 1897.

*Mr. John I. Weller*, for the appellant.

*Mr. William S. Stuhr*, for the respondent.

The opinion of the court was delivered by

VREDENBURGH, J.

The bill prays the enforcemont of an agreement between the parties, of which the following is a copy :

Buttlar v. Buttlar.

"This indenture made this thirty-first day of January, A. D. eighteen hun.,
dred and ninety-four, between Christian Buttlar, of the town of West Hoboken
in the county of Hudson and State of New Jersey, party of the first part, and
Mina Buttlar of the same place, party of the second part.

"Whereas divers disputes and unhappy differences have arisen between the
said party of the first part and his said wife, for which reason they have con-
sented and agreed and hereby do consent and agree to live separate and apart
from each other during their natural life therefore this indenture witnesseth:
that the said party of the first part, in consideration of the premises, and in
pursuance thereof, hereby covenants, promises and agrees to and with his said
wife, that it shall and may be lawful for her, his said wife, at all times here-
after to live separate and apart from him, and that he shall and will allow ·
and permit her to reside and be in such place or places and such family or
families, and with such relations, friends and other persons, and to follow and
carry on such trade or business as she may from time to time choose or think
fit; and that he shall not nor will at any time sue or suffer her to be sued for
living separate and apart from him, or compel her to live with him; nor sue,·
molest, disturb or trouble any other person whomsoever, for receiving, enter-
taining or harboring her; nor shall or will at any time hereafter claim or
demand any of her money, jewelry, plate, clothing, household goods, furniture
(excepting one-half carpet, one bed and bedding complete, one sofa, four
chairs and one clock which are to remain the sole property of Christian
Buttlar) or stock in trade which she now has in her power, custody or posses-
sion, or which she shall or may at any time hereafter have, buy or procure or
which shall be devised or given to her, or that she may otherwise acquire,
and that she shall and may enjoy an absolute disposition of the same as if she
were a *feme sole* and unmarried, except the real estate hereinafter mentioned
which is owned by them jointly.

"And further that the said party of the first part shall and will, well and
truly, pay or cause to be paid for and towards the better support and main-
tenance of his said wife the sum of seventy-five dollars ($75) per month, com-
mencing on the first day of February next, and payable on the fifteenth day
of each and every month, and which the said party of the second part does
hereby agree and take in full satisfaction of her support and maintenance and
all alimony whatever, and the said Mina Buttlar in consideration of the said
premises and also for and in consideration of the sum of one dollar to her in
hand paid, does hereby agree to and with her said husband, the party of the
first part, that he shall be entitled to receive during the term of his natural
life all the rent, income and profits of the property now owned by them in
their joint names, known as Nos. 600, 602, 604, 606 and 608 Malone street,
No. 339 West street, in the town of West Hoboken, and 654 and 656 First
street, Hoboken, the said Christian Buttlar, however, to pay all taxes that
may hereafter be levied or assessed against said real estate, interest that may
hereafter become due on mortgages now held against said property, and also
all repairs that may hereafter be required, excepting the painting of the out-
side of the buildings, to be done the coming spring, the expense of which the

Buttlar v. Buttlar.

parties hereto are to bear jointly, each to pay one-half of the cost thereof, and the said Mina Buttlar further agrees to and with her said husband that she will pay the taxes against said premises for the year eighteen hundred and ninety-three, and also all water rents up to February first, eighteen hundred and ninety-four, and said Christian Buttlar furthermore agrees that his said wife may occupy the first floor in the house known as No. 600 Malone street in the town of West Hoboken in the county and state aforesaid, until March first, eighteen hundred and ninety-four, she to pay therefor the sum of seventeen dollars ($17) when she is to vacate the same, it being, however, understood that should Mina Buttlar not vacate the said premises on or before the first day of March, then and in that case she is to pay the monthly rent of seventeen dollars ($17) therefor, payable on the first day of each and every month in advance.

"And the said Mina Buttlar further covenants and agrees to and with her said husband to indemnify and bear him harmless of and from all her debts contracted or that may hereafter be contracted by her on her account, any and all money or monies which the said Christian Buttlar may be compelled to pay on violation of this last-mentioned covenant shall be deducted from the monthly payments to be made to her for her maintenance and support. And the said Christian Buttlar further agrees to pay all assessments now in arrears against the said premises, to which the said Mina Buttlar agrees to contribute sixty-two and fifty one-hundredth dollars ($62.50) to be paid by her to Christian Buttlar on or before May first next."

The complainant is the wife of the defendant, and because of her disability, by reason of her coverture, to sue in a court of law, seeks in a court of equity a decree compelling her husband to pay, under his covenants in the above-recited agreement, certain sums of money admittedly due to her and unpaid, and certain taxes assessed against her property. Her bill was dismissed by the decree below and her appeal brings it before us for review.

While separation between husband and wife, in pursuance of mutual articles of agreement, will not be enforced by the decree of a court of equity, such separation being against the policy of our laws (*Miller* v. *Miller, Sax. 391; Aspinwall* v. *Aspinwall, 4 Dick. Ch. Rep. 302*), yet the court will not suffer a husband, who has become possessed of the property of his wife by virtue of such agreement, to avail himself of his own wrong in order to free himself from the duty to maintain her. Even without any such consideration, stipulations in such agreement to pay

money for a wife's support have always been regarded as enforceable in a court of equity in this state. *Aspinwall* v. *Aspinwall, supra ; Miller* v. *Miller, Sax. 386.* We agree with the opinion of the learned vice-chancellor who heard the cause in the court of chancery, to the extent that this suit may be regarded and, to use his expression, "must be considered as a simple action for money due by contract ; " but notwithstanding this view, he felt constrained to hold that, having been brought in a court of equity, the defendant might avail himself of any equitable defence, and admitted evidence of the defence of "hard bargain" which, if offered in any court of law, would have been overruled. Does it follow because the wife has, perforce, brought her suit to assert her legal rights, under an agreement founded upon a valuable consideration, in a court of equity—to which forum her marital *status* forced her to resort under the penalty of a submission to a serious invasion of those rights—that they are to be determined by rules of evidence which would be rejected in a court of law? The instrument in question, dated January 31st, 1894, was entered into between these two parties, directly with each other and without the intervention of trustees, and in this respect as well as in its consideration differs from the agreement which was the basis of the suit in *Aspinwall* v. *Aspinwall, supra,* cited in the opinion below. It is founded upon a valuable consideration passing from the wife to the husband in the form of a conveyance or transfer under seal by her to him, for the term of his natural life, of the rents, income and profits of certain real estate, consisting of houses and lots in Hoboken, New Jersey, of which they were jointly seized and possessed. They had two children, daughters of the marriage, one of whom was then twenty years of age and taught school so as to be self-supporting, but lived with her mother, and the other was twenty-four years old and was married and lived elsewhere. It will not be denied that the defendant's marital obligation to support his wife, together with her transfer of her property for that object to his use, furnished not only a legal but also a valuable consideration for his undertakings to that end expressed in this paper.

The following excerpt from this writing will exhibit sufficiently, perhaps, for the present purpose, the essence of that contract and the positive terms of the engagements of the parties, viz., that the defendant

" will well and truly pay or cause to be paid for and towards the better support and maintenance of his wife the sum of seventy-five dollars ($75) per month, commencing on the first day of February next and payable on the fifteenth day of each and every month, and which the said party of the second part [wife] does hereby agree and take in full satisfaction of her support and maintenance and all alimony whatsoever, and the said Mina Buttlar in consideration of the said premises and also for and in consideration of the sum of one dollar to her in hand paid, does hereby agree to and with her said husband, that he shall be entitled to receive during the term of his natural life, all the rent, income and profits of the property now owned by them in their joint names, known as Nos. 600, 602, 604, 606 and 608 Malone street, No. 339 West street, in the town of West Hoboken, and 654 and 656 First street, Hoboken, the said Christian Buttlar, however, to pay all taxes that may hereafter be levied," &c.

In pursuance of this writing it is undisputed that the defendant took exclusive possession of the premises referred to, which he has ever since retained, made leases with tenants in his own name, collected all the rents and has treated the premises in all respects as the sole owner thereof. It is also admitted by the defendant's answer and shown in the evidence that since and inclusive of November, 1895, he had failed to make the stipulated monthly payments to his wife, as well as to pay certain of the taxes against the property, his excuse, as alleged in his answer, being that " he did not have sufficient means to do so." It is clear that evidence offered in support of such a defence, if set up in any court of law in any action founded on this agreement, would have been overruled, and the question to be now determined is whether it should have been entertained in the court below. The reason which enables a married woman to assert a legal right in a court of equity is that to deny her such right is to deny her all remedy and redress for a wrong done her, such a denial being contrary to every system of jurisprudence because at the foundation of the existence of all courts lies the ancient maxim of universal application, " *ubi jus ibi remedium.*" Black-

stone in his "Commentaries" (*vol. 2 book 3 p. 109*) translates it into the common law in these words, viz., "It is a settled and invariable principle in the laws of England that every right when withheld must have a remedy, and every injury its proper redress." The rule, which has grown up in equity relating to the specific enforcement of contracts that the hardship of the contract may be set up as a defence, exists under the assumption that the party seeking specific performance and having the choice of remedies, either at law or in equity, rejected the remedy at law and selected a court of equity in preference to that of law, in order to obtain a more complete redress for the injury complained of. But in a case where no such choice can be made, where the injured party is confined to a court of equity or otherwise must go absolutely without redress through the courts, the reason of this rule ceases. It would, it seems to me, be a clear denial of a "remedy" to hold that in such a case the injured party is obliged to waive her rights at law. The complainant was entitled to the benefit of the rules of evidence which a court of law would have enforced; such suit is held to be a form of legal proceeding which is carried on in a court of equity merely because the legal right cannot be asserted in the form of a suit at law. In *Jenner* v. *Morris, 3 De G., F. & J. 45*, Lord-Justice Turner, after quoting on this subject with approval from Lord Redesdale's treatise of pleading (*Mitf. Pl. (4th ed.) 112, 134*, and cases in support), said : " It is therefore an ancient head of jurisdiction of this court to interpose in cases in which the principle of the law gives a right, but the forms of the law do not give a remedy." And in that case the court allowed a set-off in equity founded upon the defendant's claim against the husband for money loaned to purchase necessaries for the wife's support while separated from her husband, which the forms of law prevented him from recovering from the husband by suit at law. And see *Walker* v. *Simpson, 7 Watts & S. 83; 1 Drew. & S. 218; Harris* v. *Lee, 1 P. Wms. 482, 483.*

If, however, this case is to be decided solely by the rules of evidence and practice as administered by a court of equity no different result would be reached. Such an agreement, founded

upon a valuable consideration granted by its terms, is enforced by a court of equity in the wife's behalf, not only upon the general equitable ground laid down in the *Aspinwall Case, supra* (where there was no such consideration), but also for the reason that the husband's possession of the property of the wife fastens upon him the obligation of maintaining her. *2 Story Eq. Jur. (6th ed.)* ¶ *1424* and cases cited. But, applying the rules relating to the specific performance of contracts in equity, the defendant seems to have no standing. Pomeroy, in his *3 Jur.* ¶ *1404*, on this subject states the equitable rule to be that

"where the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach,"

and, as approved and applied by the courts of this state both before and since the case of *Plummer* v. *Keppler, 11 C. E. Gr. 482,* the late Vice-Chancellor Van Fleet there stated the rule briefly as follows: "While the remedy by specific performance is discretionary, yet when the contract has been fairly procured and its enforcement will work no injustice or hardship, it is enforced almost as a matter of course." Adopting these statements of the rule as a guide, was this contract fairly procured? That it was fairly procured is not denied by this defendant either in his answer or in his proofs. It was drawn at his own request, by his confidential lawyer and adviser, who was then and has ever since remained, not only in the court of chancery but also in this court, his chosen counsel. Nor has this defendant claimed that this paper was procured through any fraud, accident or duress, nor has he at any time offered to rescind, revoke or cancel it, nor to re-assign to the complainant her share of the leasehold estates, or her reversionary interest in the rented premises, or to place her back in the situation she originally occupied with respect to her properties, with the right to collect in her own name the portion of the rents to which she was entitled. On the contrary, while still holding fast to all the benefits

derivable by him from the exclusive possession of her property granted him by the instrument, he seeks to repudiate the obligations it casts upon him. He could not, it seems to me, escape liability on his contract except by rescission, and that could be accomplished, if at all under present conditions, only by an offer, by way of a cross-bill, to restore the consideration.

Will the enforcement of this agreement work any injustice or hardship to the defendant? Its language is devoid of all ambiguity. There is nothing in it to suggest that his payments under it to his wife were to be limited to or conditioned upon the amount of his net receipts of rents from the joint property, and no reason is perceived why he should not contribute from his private income to the fulfillment of his marital obligations, in accordance with this agreement, if that be necessary in order to make up a deficiency of rents. There is no evidence to show that the expressed sum of $75 a month was excessive for the wife's proper maintenance. What the defendant's private income from his regular business amounted to must be, under the evidence, the subject of mere conjecture, for the whole account was in his keeping. He produced no cash-book or ledger to show the amount of his business dealings, and when pressed by cross-examining counsel as to whether his net income from his own business (feed-store business) was not more than $700 a year, he answered, "I doubt it." In his unverified answer to the bill of complainant he states that the income from his business was "hardly sufficient to keep him," but he fails to state the amount of his receipts therefrom and his disbursements thereout, nor what sum he regarded as insufficient, so that the court could judge what sum should be regarded as sufficient. If his wife be correct in her testimony his habits of life may have exhausted quite a considerable sum in order to maintain him in his peculiar style of living. It is not important to quote the testimony on this point. It is sufficient to say that it shows the separation arose not from any fault charged upon the complainant but from that of the defendant.

The adjudications in this state and elsewhere hold it to be firmly-settled law that the husband is bound to support his wife

Buttlar v. Buttlar.

where the two are separated by mutual consent, the same as where they are living in cohabitation, and even the same as where they are separated through his fault (*1 Bish. Mar. & D. 578*, and cases there cited); and it is held also that in separations resting only in parol and independently of any express agreement founded on a valuable consideration, the husband is bound to furnish his wife with such articles of food, apparel, medicine and medical attendance, nursing, such provided means of locomotion, provided habitation and furniture, such provision for her protection in society, and the like, as the husband, considering his ability and standing, ought to furnish to his wife for her sustenance and preservation of her health and her comfort. *1 Bish. Mar. & D.* ¶ *554*, and cases cited in note.

The defendant does not pretend that the complainant's allowance was exorbitant or excessive in amount. After accepting from her her means of support, and limiting her to a fixed monthly sum, and expressly providing that he should not be liable for any of her debts, he should not be heard to complain of the amount so fixed, especially in the absence of a fair and full statement to the court of his faculties. Even without such a provision in the contract, the defendant was protected against any liability for his wife's debts. *Aspinwall* v. *Aspinwall*, *supra*. In *1 Bish. Mar. & D.* ¶ *580* it is declared to be the law that if the wife

" engages to accept a small sum, which is paid her, though the sum be wholly inadequate, still so long as the separation continues on this footing she cannot pledge his credit for anything, however much she may stand in need of the credit."

The defendant has not met the burden of proof which his defence has assumed on this branch of the case, and has utterly failed to show that his income from his business was not sufficient to enable him to supply therefrom any deficiency of the rents needed to satisfy his covenanted payments.

Again, under the circumstances of the transfer of this property to the defendant and his assumption of the exclusive possession of the joint properties, he was bound to use at least

ordinary care and diligence in its management, and cannot ask a court of equity to release him from losses of rental income in consequence of the want of such care. If, by his own fault, the rents fell short of their usual and former yield, he should not be heard in his defence of the alleged "hardship" of the contract. Upon this point I shall quote from the testimony of his housekeeper, John Barnecker, who had charge of the houses, and which I shall assume to be correct because the defendant, although afterwards recalled to the witness-stand, made no attempt either to contradict or explain it. This testimony was given as follows, viz.:

"*Q.* What was the cause of that [the non-filling of the houses]?

"*A.* Mr. Buttlar would not repair the houses, inside or out; no carpets on the stairs; there was old oilcloth on the halls; and he would not do any repairing to them, and of course I could not.

"*Q.* Were there tenants willing to go in providing that was done?

"*A.* Yes, sir; and some would have staid in if Mr. Buttlar done some repairs to them.

"*Q.* (By the court). That is, were willing to go in if he would fix them up?

"*A.* Yes, sir.

"*Q.* But refused to go in in their present condition?

"*A.* Yes, sir.

"*Q.* (By Mr. Weller). And did you tell Mr. Buttlar?

"*A.* Yes, sir; two or three times.

"*Q.* What did he say?

"*A.* That he would not do anything until they were rented, and not before."

No one having the slighest experience in the renting of houses would expect parties either to become or remain tenants under appearances so forbidding unless definite promises of improvements were made by the owners to intending tenants previous to their occupation under the contract of renting. Such promises the housekeeper swears, without contradiction, he vainly endeavored to obtain from the defendant, and resulted in the refusal of tenants to occupy. Without extending this opinion unduly into further details of the evidence it is sufficient to add that the defence of hardship interposed to the enforcement of the payment by the defendant of the sums of money provided for in the writing, is not sustained.

Buttlar *v.* Buttlar.

The only other ground upon which the decree below is rested is that the defendant offered by his answer and evidence to resume marital relations with the complainant. Passing the question of the appropriate practice to be pursued, and dealing with it as if a cross-bill had been duly filed by the defendant and the complainant had the benefit of her answer upon the record, the evidence offered in support lacks requisite corroboration, if indeed there is any legal evidence upon the subject. That part of the defendant's case rests entirely upon his own testimony. He testifies that he made no offer, personally, to resume marital relations with the complainant, but that he "sent his friends" to make such an offer. He does not designate any person or persons as such authorized friends, nor does he state the date, or the terms, of any offer which he says he deputed them to make, nor does it appear that anyone ever in fact made any offer in his behalf to his wife upon the subject. But even if the evidence had clearly shown the communication of a *bona fide* offer at any time from the defendant to the complainant to resume marital relations with her, her right to recover in this suit the arrears of payments due her under this agreement would not have been affected. The consideration of the contract having passed to the husband he could not, while still retaining it, and without offering to restore it, at will, relieve himself from the obligations assumed by him. Such attempt stands opposed to every principle of mutuality entrenched in the law of contracts.

The decree appealed from should be reversed and a decree rendered in favor of the complainant for the amount due according to the terms of the contract.

*For reversal*—Depue, Dixon, Garrison, Lippincott, Gummere, Ludlow, Collins, Nixon, Hendrickson, Adams, Vredenburgh—11.

*For affirmance*—Van Syckel, Bogert—2.