## Pletcher v. Pletcher.

S. D. Gettig (with him John J. Bower), for plaintiff.
J. K. Johnston (with him Philip H. Johnston), for defendant.

FLEMING, P. J., July 23, 1929.—This matter is before the court upon an affidavit of defense raising questions of law, filed under the provisions of

section 20 of the Practice Act of May 14, 1915, P. L. 483. The contentions of the defendant are that the plaintiff's statement fails to show that she was any more than a mere volunteer, and that no privity of contract existed between plaintiff and defendant, and that, therefore, as a matter of law, no liability rests upon the defendant.

A careful consideration of plaintiff's statement shows that the plaintiff was the daughter of defendant's wife by a prior marriage; that plaintiff's mother, being the defendant's wife, became ill quite sometime before her death, and that she, the mother and wife of the parties, requested the plaintiff to pay doctor and hospital bills which had been contracted. The statement of the plaintiff does not aver that plaintiff's mother had requested her husband, the defendant, to pay these bills, nor does it aver that he, the defendant, had unreasonably neglected or had refused to pay the same. It suffices with the averment that such bills were not paid "by her husband, A. A. Pletcher," and that they were paid "with the knowledge and consent of the said A. A. Pletcher." It is later averred in the statement that neither plaintiff's mother nor her husband, this defendant, had the ready money to pay such bills, following such averment with the vague wording, "this plaintiff to be reimbursed for these bills by the said A. A. Pletcher, the husband of Cora Pletcher." Nowhere in said statement is it averred that the defendant was consulted about nor that he agreed to pay the bills in question. Nor does the plaintiff aver that she was under a legal compulsion to pay the same.

While we regard the moral obligation to pay his stepdaughter for these moneys as most firmly fixed upon the defendant, we are of the opinion that the contentions of the defendant, in a legal sense, are well founded and that the points raised must be decided in his favor.

Jones v. Markley et ux., 92 Pa. Superior Ct. 348, was an action in *assumpsit* to recover from a husband a loan made to his wife for the purchase of necessaries. Therein Judge Henderson says: "An attempt was made in the statement of claim to charge the appellant on an implied liability for the money because at the time it was procured by the wife she represented that the moneys were needed for the purchase of necessaries of life by her. It nowhere appears in the statement of claim that the defendant had driven his wife from his home or that he had failed to provide her with necessaries in their home, and it is only when the husband has abandoned his home or driven his wife therefrom or has refused to provide for her therein that an implied credit arises in her favor, under which she is authorized to procure lodging, clothing, food and other necessaries suitable to her condition in life and reasonably within the ability of her husband to pay. It was held, however, in Walker v. Simpson, 7 W. & S. 83, that the liability did not cover money borrowed by the wife, as that was not an equivalent of the things which a husband was obliged to furnish his wife under the classification of necessaries. It is not set forth in the statement of claim that the circumstances of the wife were such as to entitle her to charge her husband's estate with any obligation. The averment is merely that the loan was made on her representation that the money was needed for the purchase of necessaries. This falls far short of creating a *prima facie* liability of the husband."

The instant case presents an example of an attempt to charge the defendant with an implied liability. The purpose for which the money is averred to have been supplied by the plaintiff was for hospital care and doctors' bills, which might be said to come within the class of "other necessaries suitable to her condition in life," as mentioned in Jones v. Markley, *supra.* It does not appear from the plaintiff's statement that the defendant refused or

neglected unreasonably to furnish the services and attention required by his wife, or that he intended that the bills for the same should never be paid. The averment is that "these bills were a great source of annoyance to her, and she requested her daughter, Lorilla Pletcher, the plaintiff, to pay these bills under the direction of the said Cora Pletcher and with the knowledge and consent of the said A. A. Pletcher." Bills and obligations are commonly annoying to all honest folks, but however honest one may 'be, there may be times and circumstances when one cannot pay. The fact that such bills were paid by the consent of the defendant—the statement does not say whether such consent was express or implied—does not entitle us to infer that he, the defendant, requested the plaintiff to pay them or that he, the defendant, agreed to reimburse the plaintiff for such expenditures. That the defendant was originally liable to the parties with whom such bills had been contracted cannot be denied, and the averment in plaintiff's statement of claim is that he was liable for the same. The statement does not aver, however, that plaintiff paid these bills at the request of the defendant, or that she was a surety for their payment, or that she was under any form of legal compulsion to pay them. That her mother was annoyed by these bills, and that plaintiff paid them out of the goodness of heart to relieve her mother's anxiety, is definitely certain and beyond question. But this is not sufficient, in a legal sense, to bind the defendant.

Nor can the plaintiff invoke the aid of subrogation in any way. Beach on Modern Equity Jurisprudence, § 801, says: "But one who is only a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity. He must have paid upon request or as a surety, or under some compulsion made necessary by the adequate protection of his own right. In such a case, instead of creating any right of subrogation, the payment operates as an absolute discharge of the debt so paid."

Sheldon on Subrogation, § 240, says: "The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own."

Subrogation can be invoked only for the protection of one who has paid the debt of another because he had made himself legally liable in connection therewith. When under no liability himself in connection with the debt he voluntarily pays it, no equity can arise from the transaction calling for protection. In such case, payment extinguishes the debt, except as the creditor received the money upon the understanding that the debt is to be assigned to the party paying. In such a case, the transaction being one of purchase, and not payment, the debt survives: Lackawanna Trust and Safe Deposit Co. v. Gomeringer, 236 Pa. 179.

In the instant case, however, there is no averment that plaintiff received or was to receive an assignment of the bills in question. The payment by the plaintiff, under the facts averred, therefore, brought about an extinguishment of the debt. The manner of payment was, in effect, a loan of cash by the plaintiff to her mother, which, under the ruling of Walker v. Simpson, 7 W. & S. 83, cited above, precludes a recovery in this case. The payment made by the plaintiff was made merely to relieve the anxiety of her mother and to extinguish debts in which she, the plaintiff, had no interest. The plaintiff was under no legal obligation to pay these debts. She voluntarily paid them without a request of the defendant or without any form of agreement or understanding with the defendant as to reimbursement.

As great as is our admiration for the manner in which the plaintiff stood by her mother in her hours of pain and suffering, and thereby sought to make her last days as peaceful and comfortable as was possible, we are compelled, as a matter of law, to sustain the contentions of the defendant and to rule against her right of recovery in this suit.

And now, July 23, 1929, after due consideration and for reasons noted above, the questions of law raised in the affidavit of defense filed are decided in favor of the defendant and against the plaintiff; such finding disposing of the entire question herein involved, judgment is directed to be entered in favor of the defendant and against the plaintiff.