This is an appeal from the Essex county orphans court. The meritorious question presented is, what sum did the decedent owe to his wife, Frances B. Broderson, at the time of his death? Before taking that up, I must consider a matter of procedure.
The estate is insolvent. The executors, pursuant to section 102 of the Orphans Court act (Comp. Stat. p. 3850), reported *Page 533 
to the court the several claims which had been exhibited against the estate, as well as an account of the assets of the estate. Among the claims listed was that of Mrs. Broderson, containing several items aggregating $31,874. Exceptions thereto were filed by sundry parties in interest, under section 104. The orphans court heard proofs upon the exceptions and by its decree dated July 29th, 1932, overruled some exceptions and allowed others to the extent of $6,874, and so reduced the claim of Mrs. Broderson to the sum of $25,000. Mrs. Broderson promptly appealed to this court from so much of the decree as sustained the exceptions in part and reduced her claim to $25,000. Two of the exceptants, on August 30th, 1932, more than twenty days after the decree was made, filed an answer to the petition of appeal in which they deny that the portion of the decree complained of by appellant is erroneous; further answering, they say that so much of the decree as overruled their exceptions in part and sustained the claim of Mrs. Broderson to the extent of $25,000, is erroneous. The answer ends with a prayer that the aforesaid portions of the decree may be reversed by this court.
Section 104 of the Orphans Court act provides, in cases like the instant one, that either party may appeal to the ordinary within twenty days after the orphans court renders its decree and "not after." The only appeal before this court is that taken by Mrs. Broderson. Unless specially permitted by statute or rule, an answer to a petition of appeal cannot take the place of a cross appeal. Merritt v. Jordan, 65 N.J. Eq. 772. Exceptants rely on rule 62 of this court. But this rule applies only to an appeal from a decree "on the settlement of the account of an executor, administrator, guardian or trustee." The account mentioned in the rule is a statement of the receipts and disbursements of the executor or other accountant. The report of the executor, which is the basis of the present litigation, is not within the scope of the rule; it merely comprises a list of the debts of the testator and an inventory of the assets. Rule 62 does not apply. But even if I were persuaded to the contrary, I would hold that, since *Page 534 
the answer of the respondent specifying items which he supposes to be erroneous, takes the place and performs the function of an appeal, it must be filed within the time to appeal, limited by the statute. The answer should have been, but was not, filed within twenty days of the decree of the orphans court. Therefore the question whether the orphans court erred in overruling the exceptions in part is not presented to me. The only question is whether that court erred in sustaining the exceptions to items of Mrs. Broderson's claim totaling $6,874.
The items of appellant's claim which were disallowed by the orphans court were based on promissory notes to her order, made by the decedent. The appellant produced the notes and testified that she was the holder thereof. Testimony by her as to the consideration for the notes would have brought in conversations or transactions with the deceased, and upon objection by the exceptants, was excluded. The ruling was correct, if section 4 of the Evidence act (Comp. Stat. p. 2218) governs. But appellant contends that her testimony should have been received pursuant to section 6 of the Evidence act (Comp. Stat. p. 2223):
"The complainant or petitioner, in any action or proceeding of an equitable nature in any court, shall be a competent witness to disprove so much of the defendant's answer as may be responsive to the allegations contained in the bill of complaint or petition, and any defendant in any such action or proceeding shall be a competent witness for or against any other defendant not jointly interested with him in the matter in controversy."
Appellant urges that the proceeding in the orphans court should be regarded as a suit of an equitable nature. Generally speaking, the orphans court and the prerogative court are not courts of equity and cannot afford equitable relief. But section 104 of the Orphans Court act gives to the court jurisdiction to adjudicate upon all claims filed with the executor. This includes claims of both a legal and equitable nature, as is clearly shown by section 105 which gives the creditor the election "to proceed at law or in equity" instead of having his claim determined by the orphans court. If *Page 535 
Mrs. Broderson had chosen to take advantage of section 105, she would have had to bring suit in the court of chancery, since a promissory note made by a husband to his wife is void in a court of law; but even in chancery her suit would have been determined on legal principles, except in so far as the contract between husband and wife is cognizable in the one court and not in the other. Buttlar v. Buttlar, 57 N.J. Eq. 645. The appellant's case stands on the same footing as if she had sued in chancery.
To understand section 6 of the Evidence act, we must look back many years. The equity practice which we inherited from England required that the answer to a bill should be sworn to. So much of the answer as was strictly responsive to the bill was, upon the final hearing, evidential of the facts therein stated. It was not until 1867 that the legislature permitted a complainant to call upon the defendant to answer without oath, and provided in such case that the statements in the answer, whether responsive or not, should not be evidence against the complainant upon the hearing. P.L. 1867 p. 166; Comp. Stat. p. 417 § 19. It was also the law in the courts both of equity and of law, that a party to a cause was not a competent witness. This rule was modified by successive enactments. By P.L. 1849 p. 265 andP.L. 1852 p. 256 (Comp. Stat. p. 2218 § 2), a party in an action was made an admissible witness when called by his adversary. Lastly, by P.L. 1859 p. 489 (now embodied in Comp.Stat. p. 2218 § 4), a party was in general admitted as a witness in his own behalf. The section on which appellant relies became law in 1855. P.L. 1855 p. 668. At that time, a complainant in equity was under the disadvantage that his testimony was not admissible while the defendant's evidence contained in the answer was admissible. The obvious purpose of the statute was to place the parties on a parity and to permit a complainant not to testify generally, but merely to disprove so much of the answer as is responsive to the allegations of the bill, and therefore evidential. This section was not authority for the reception of appellant's testimony in the present cause. The exceptions filed in the orphans court were not *Page 536 
evidential; no part of them could be called either "responsive to the allegations contained" in appellant's proof of claim, or not responsive. The evidence offered was properly rejected.
The signature of the decedent to the notes was proved by disinterested witnesses. Beyond this, there was no evidence presented of any consequence. The question is, what presumptions arise from the notes? Do they signify that decedent intended to make a gift to his wife at a future date and evidenced his intention by the notes? If so, they are not enforceable to the disadvantage of other creditors. Do the notes indicate that decedent was indebted to his wife in the amount of the notes, whether for money loaned or other valuable consideration, and that he gave the notes as evidence of the debt? If this is the correct solution, the claim of Mrs. Broderson should have been allowed, with one exception to be noted later. It is the general rule that a promissory note is presumed to have been given in settlement of the maker's debt to the payee. 8 C.J. 992.
"Undoubtedly, the giving of a promissory note raises the presumption that the amount named in it is then owing by the maker to the payee." John Lucas Co. v. Bradley,246 Fed. Rep. 693. Section 24 of the Uniform Negotiable Instruments law (Comp. Stat. p. 3738) provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have been a party thereto for value." The presumption was enforced in Penbrook Trust Co. v. Wiegand Co.,100 N.J. Law 353, and First National Bank v. Keown, 9 N.J. Mis. R. 892;156 Atl. Rep. 3. The notes in question contain the usual words "value received."
It is suggested that the confidential relations between the parties to these notes, the fact that they were husband and wife, and that the notes are void at law, take them out from under the operation of the rule and of the statute above stated and casts on Mrs. Broderson the burden of proving that her husband was indebted to her when he gave the notes. Counsel has referred me to no cases supporting this suggestion. *Page 537 
If the maker of the notes were still living and were being sued on them in chancery, it seems plain to me, on the Buttlar Case,supra, that his wife might safely rely on the presumption of consideration, until evidence of lack of consideration were produced. She would be "entitled to the benefit of the rules of evidence which a court of law would have enforced." The notes would be evidence not only of the promise to pay, but also, and by force of the statute, evidence that the promise was supported by a valuable consideration. The proceeding in the orphans court was in substance an action on the notes by Mrs. Broderson against her husband's representatives. Consideration should have been presumed and her claim allowed, except in one particular.
Appellant produced decedent's note for $3,250, dated December 1st, 1922, and payable on demand with interest at six per cent. Across the face was written "renewed July 1st, 1927." Appellant also produced a second note for the same sum, dated July 1st, 1927, which she conceded was given in renewal of the first note. She does not, therefore, claim on the first note the principal sum, but she does claim interest thereon from December 1st, 1922, to July 1st, 1927. I think that when one note is given and accepted in renewal of an earlier note, the presumption is that the old obligation is settled in full. Mrs. Broderson did, indeed, testify that she had never been paid anything on the note of December 1st, 1922, but the interest thereon may have been satisfied in some other manner than payment or may have been forgiven by the wife. Her testimony is not sufficient to keep the old note alive after a renewal note has been given. With the exception of this interest item, her claim should have been allowed in full. The decree of the court below must be modified accordingly.
No counsel fees will be allowed. In re Queen, 82 N.J. Eq. 588;In re Brook, 106 N.J. Eq. 242. *Page 538