CALAME, appellant, and CALAME, respondent.

1. Under the statute of this state, alimony cannot be given in a gross sum, nor in a portion of the real estate of the husband.

2. An agreement in writing, made by a husband who had deserted his wife, to give her certain land and money, in lieu of all her claim upon him for maintenance, the offer having been accepted by the wife, will, on a divorce being granted, be enforced in equity.

This was an appeal from a decree made in accordance with the opinion of the Vice-Chancellor, reported in 9 *C. E. Green* 441.

*Mr. Stone,* for appellant.

*Mr. Coult,* for respondent.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The bill was brought in this case by the wife for a divorce from her husband, on the ground of his adultery. The fact of the defendant's guilt being fully proved, no question has been raised in this court on that point. The argument was confined to an examination of the principle on which alimony has been settled. The Vice-Chancellor, who sat in this case in the Court of Chancery, assigned to the wife in this respect, a certain part of the real estate of the husband in fee, and a specified sum of money in gross. This course was taken, as it was deemed to be in pursuance of the powers conferred by the ninth section of the act concerning divorces. (*Nix. Dig.* 247.)

After a careful consideration of the subject, I find myself unable to concur in this construction. This is an old law; it has been, in its present form, on the statute books for over fifty years, and it has never before received this interpretation. During this long period, although many cases must have arisen in which the power now claimed would have been highly useful, the practice has been entirely settled, the uniform course being to give the wife an allowance of money in periodical installments. This fact seems to me to show, very strongly, what the sense of the profession and of the bench has been on this subject. And I think the language and entire frame of the section has produced this generally prevailing opinion. Its language is this : " When a divorce shall be decreed, it shall and may be lawful for the Court of Chancery to take such order touching the alimony and main-

Calame v. Calame.

-tenance of the wife, and also touching the care and mainte-
nance of the children, or any of them, by the said husband,
as from the circumstances of the parties and the nature of the
case, shall be fit, reasonable, and just." Now, the terms ali-
mony and maintenance, are emphatically technical words,
having for ages borne a fixed and established meaning, and
they never have been held to comprise, within their legitimate
signification, an allowance of a portion of the husband's estate
in fee. It is not pretended that there is any expression in
this law which tends to show that these words have been used
in a different sense from that which, as terms of art, they
carry with them ; and such being the case, it seems to me
that, upon general principles, they must be held to embody
simply their technical signification. Nor do I find any part of
the context of this act which lends a wider meaning to them.
It is urged that an inference on this side may be drawn from
the fact that, as the wife, by the divorce, will be cut off from
her claim to dower, it must have been the intention that some
part of her husband's real estate should be allotted to her.
It is not necessary to express any opinion on the question
whether a decree for divorce a vinculo matrimonii, will have
the effect, in this state, which is assumed in this contention.
The point was settled the other way, in a case receiving great
consideration from the Court of Appeals in New York, the
statute of that state being, perhaps, not substantially variant
from our own. *Wait* v. *Wait*, 4 *Comst.* 95. But, on the
assumption of such deprivation, what follows? not, as I think,
that, in hostility to the terms which have been used, a por-
tion of the real property is to be given to the wife, but that
her loss, in this respect, may have the effect of increasing the
amount of her alimony. Thus justice can be done without
forcing the terms from their technical import. Nor can I
perceive the force of the argument that, as these terms have
acquired their meaning from having been applied to divorces
from bed and board, they should have a wider scope when
applied to divorces from the bond of matrimony. How is a
change of meaning to be implied, when the language under-

Calame v. Calame.

stood technically, is certainly not inapt when used in either connection ?    We may think that it is advisable to give the wife, when divorced absolutely, a part of the land, but may not the legislature have thought otherwise ?    And, unless we can say that such a purpose is highly improbable, it does not seem to be within the legitimate scope of construction to reject the long established meaning of the words of the act.    Besides, by attempting to do so, we are led into this incongruity, that, in order to stretch the meaning of the words in question, in their application to general divorces, we must also stretch it with respect to limited divorces.    The clause under consideration relates to both kinds of divorces, so that, if land can be awarded as alimony where there is a divorce from the bond of matrimony, it can where there is a mere separation from bed and board.    This result alone would seem to be sufficient to demonstrate the inadmissibility of the interpretation in question.    In aid of this view, I will, in conclusion, point to the fact, that the modes appointed by the act to enforce the payment of the alimony, such as requiring security from the husband, and authorizing the sequestration of his personal estate, and the rents and profits of his real estate, appear to stand in opposition to the idea that a part of the land itself can be set apart for the wife.    In fine, as the legislative language, putting upon it its well settled meaning, will not lead to any absurd or unreasonable result, in my opinion the section must be held to import that, where an allowance is made under its authority, such allowance must be alimony— that is, money payments of the character of an annuity.

But notwithstanding these views, I think the decree is right and should be sustained.    It appears in the case, that after the husband had deserted his wife and while he was living in a state of adultery, he offered, in writing, to turn over to the wife the land in question, and to pay to her the sum of money which the decree awards to her.    The wife accepted, in writing, this offer.    The bill sets up this arrangement and asks that it be carried into execution.    Why should not this be done ?    It is true that according to the course of

Calame v. Calame.

English equity, the court cannot enforce an agreement of the husband and wife to live apart, but it is equally true, and is established by an unbroken current of authorities, that such court will enforce such agreement, a trustee being a party to it, for the payment of separate maintenance, according to its stipulations. Sir William Grant, in the case of *Worrall* v. *Jacob*, 3 *Mer.* 268, adverts to the singularity that while the court refuses to carry the articles into effect with respect to the separation, it will nevertheless put in force the accessorial agreement for the support of the wife. But, however incongruous the practice may be, as I have said, it is absolutely settled and indisputable. 2 *Roper* 284. In the case of *Emery* v. *Neighbour*, 2 *Halst. R.* 144, the doctrine is referred to as the admitted law. If, therefore, in the present case, a trustee had been a party to this agreement, the equitable validity of it could not have been drawn in question. The inquiry therefore presented is, as to the effect of this contract made directly between husband and wife. Undoubtedly the general rule is clear, that at common law a contract made between married persons will not be binding either in equity or in a court of law. Thus in *Coke Litt.*, 3 *a*, it is said a husband cannot make a grant or conveyance directly to his wife during coverture. And there are many decisions in which Chancellors have declared that they could not lend assistance to such deeds or to kindred acts. But this rule, although of great prevalence, was not absolutely inflexible, for on some occasions it would bend in favor of equities. There are many cases exemplifying this deviation. In *Lucas* v. *Lucas*, 1 *Atk.* 270, Lord Hardwicke refers to several instances of gifts between husband and wife which had been supported, and the doctrine was signally enforced by Lord Eldon, in the case of *Lady Arundell* v. *Phipps*, 10 *Ves.* 146. But for present purposes, the most important case of this class, inasmuch as the principle on which it is decided bears a close analogy to the case under consideration, is that of *Shepard* v. *Shepard*, 7 *Johns. Ch.* 57. A conveyance of certain lands had been made by the husband immediately to the wife, and Chancellor

Kent pronounced in favor of the validity of the gift, on the ground that its purpose was to make a *provision* for the wife.

Nor are the books destitute of authorities directly in point. *Head* v. *Head*, 3 *Atk.* 547, is of this character. The facts were these. The husband wrote to the father of the wife that he was willing to pay for the support of the wife a certain annual sum, so long as they should live apart, and the agreement for the support was enforced by Lord Hardwicke. *More* v. *Freeman*, *Bunbury* 205, and *Guth* v. *Guth*, 3 *Bro. C. C.* 614, are to the same purpose; and in *McKennan* v. *Phillips*, 6 *Wharton* 572, a decision was made, resting on the same basis. In the case of *Frampton* v. *Frampton*, 4 *Bear.* 294, Lord Langdale alludes to this subject, and thus expresses his views: "But the cases of *Fitzer* v. *Fitzer*, 2 *Atk.* 512, and *Cooke* v. *Wiggins*, 10 *Ves.* 191, have not been overruled, and I am not aware that it has ever been decided, and no case has been adduced to show, that without the intervention and covenant of a trustee, the husband may not voluntarily execute a deed, or create a trust in favor of his wife, and that such deed or trust may not be binding as against him, even if the benefit of that deed or trust be made dependent upon an existing or continuing separation, which was the principal, if not only inducement, for the whole arrangement." I am aware that in the English courts the case of *Guth* v. *Guth*, just cited, has been incidentally criticised, but I do not find that it has been overruled, and the criticism in question seems to arise out of the difficulty of regarding as enforceable, in the courts of that country, these contracts for maintenance in the absence of a trustee, from the circumstance that the grounds of the separation cannot be looked into, nor the agreement to separate be approved, inasmuch as cognizance over such matters resides in the ecclesiastical courts. But no such obstacle impedes the course of equity in this state, as, in this class of cases, the power to pass upon the propriety of the separation and on the validity of the agreement for maintenance, is possessed by the same court, and can be regulated in the same decree.

Upon this branch of the case, then, my deduction from these principles and decisions is, that it was within the competency of equity to enforce, as a part of the decree of divorce, the agreement made, in lieu of alimony, between the complainant and defendant. I do not mean, however, that every agreement which is thus made will be supported. The court should undoubtedly look into these arrangements and their surroundings; but, when it appears that the separation of the wife, forming the groundwork of the agreement, was justifiable, and the provision is suitable, to this extent it is, in my judgment, safe to say that the contract should be upheld. These conditions being present in this case, I shall vote to affirm this decree, with costs.

Decree unanimously affirmed.