Wood *v.* Chetwood.

MARY S. WOOD, executrix of the will of HANNAH CHETWOOD, deceased,

*v.*

BLANCHE CHETWOOD, executrix of the will of GEORGE R. CHETWOOD, deceased.

1. Possession of a bond or other instrument for the payment of money by the payee, raises a presumption of delivery sufficient to make out a *prima facie* case.

2. Courts of equity alone can give a remedy on a contract made between a husband and his wife, and this is so whether redress is sought by one of the original parties, or by or against the legal representative of one or both of the original parties.

3. No particular words are necessary to make a writing under seal obligatory, provided it contains words acknowledging an indebtedness or binding the maker to pay a debt.

4. A husband who receives the principal of his wife's separate estate is bound to account to her for it.

On final hearing on pleadings and proofs.

*Mr. R. V. Lindabury,* for complainant.

Wood *v.* Chetwood.

*Mr. Cortlandt Parker,* for defendant.

VAN FLEET, V. C.

This suit is brought by the executrix of a wife against the executrix of her husband, to enforce the payment of a debt which, it is alleged, the husband owed to his wife at the time of her death. Hannah Chetwood, the first wife of Dr. George R. Chetwood, died on the 25th of January, 1878. She left a will, which has been proved, and letters testamentary granted thereon to the complainant. Dr. Chetwood died in April, 1887. He also left a will, which has been proved, and letters testamentary granted thereon to the defendant. The defendant was Dr. Chetwood's second wife, and is now his widow.

The foundation of the complainant's action is a writing, drawn and signed by Dr. Chetwood, which reads as follows :

"After my decease, and as soon as I am buried, I hereby direct my executors to pay to my wife, Hannah Chetwood, the sum of $5,000, which amount she states I have received as belonging to her, including interest. And should she not survive me, then my wish is that the same sum of $5,000 be paid to her executors (after my decease) for the benefit of her heirs.

"September 19th, 1866.

"G. R. CHETWOOD. [L. S.]"

"I hereby enjoin and command my executors to pay to my wife Hannah the above-named sum of $5,000 immediately after my death, and in case of her death, to pay the same to her legal representatives, after my death.

"July 18th, 1871.

"G. R. CHETWOOD."

The writing, it will be observed, consists of two parts made nearly five years apart, the first bearing date in September, 1866, and the last in July, 1871. The proofs show that the paper was in Mrs. Chetwood's possession both before and after the addition in 1871 was made, and also that both parts are in the handwriting of Dr. Chetwood. The fact that the obligee named in a bond, or the payee named in a promissory note or any other instrument given for the payment of money, has possession of the paper, raises a presumption of delivery sufficient to make out a *prima facie* case. This presumption, like most other pre-

Wood *v.* Chetwood.

sumptions, may be rebutted, but the proof in rebuttal, to be effectual, must be strong enough to produce a conviction that the obligee or payee obtained possession of the paper without the consent of its maker. *Smith* v. *Moore, 3 Gr. Ch. 485 ; Hill* v. *Beach, 1 Beas. 31.* Here there is no proof whatever tending to rebut the presumption which the fact of possession justifies, and it must, therefore, be considered as established that the paper was delivered by Dr. Chetwood to his wife.

If a right of action exists in the complainant, it would seem to be unquestionable that this court has exclusive original jurisdiction over it. The foundation of the action is a contract made by a husband with his wife. To entitle the complainant to recover, a contract, either express or implied, must be shown to have existed between the husband and his wife. Contracts between persons holding this relation to each other still stand on their ancient footing—void at law, but good in equity, if fair and fairly obtained. The statutes giving married women the same dominion over their property that they might exercise if they were single, expressly declare : " Nor shall anything herein enable husband or wife to contract with or to sue each other except as heretofore." *Rev. p. 639 § 14.* Courts of equity alone can give a remedy on a contract made between a husband and his wife, whether redress is sought by one of the original parties against the other, or by or against the legal representative of one or both of the original parties. *Woodruff* v. *Clark, 13 Vr. 198 ; Gould* v. *Gould, 8 Stew. Eq. 37 ; S. C. on appeal, Id. 562 ; Rusling* v. *Rusling, 18 Vr. 1 ; National Bank of Rahway* v. *Brewster, 20 Vr. 231.*

The decision of the case must turn on the answer which shall be given to this question—what effect is to be given to the writing ? Is it a mere abortive attempt by Dr. Chetwood to make a will, or does it bind him to pay his wife a definite sum of money, or is it an admission that he has received a sum of money belonging to his wife ? As these questions shall be answered so must the decision be. The complainant's case stands on the paper alone. No proof, *aliunde* the paper, has been made showing that Dr. Chetwood ever received a penny belonging to

---

Wood *v.* Chetwood.

---

his wife. It has not even been shown when the parties were married. The bill says that the marriage took place prior to 1866, and the answer says that it occurred on the 29th of July, 1828, but no proof of its date has been offered. The fact, however, is undisputed that the marriage relation existed between the parties at the time the writing was made. The paper itself shows that.

The main contention, on the part of the complainant, is that the writing is a bond, or a sealed promise to pay a debt, while the defendant insists that it is purely testamentary in its character, and is accurately described when it is called an abortive will. I do not think that effect can be given to the paper as a bond or other instrument of like nature. It is true that no particular form of words is essential to make a writing under seal obligatory, but that any words which acknowledge the debt, or indicate that the maker intends to bind himself to pay, will be sufficient. *3 Bac. Abr. 692, tit. "Obligations" B; Add. on Con. 171; 2 Pars. on Con. 643.* In *Sawyer* v. *Mawgridge, 11 Mod. 218,* the writing sued on read as follows :

"These are to authorize you, J. S, to sell so many of my goods as come to 9£, to pay my debts, which I do hereby acknowledge to owe to you."

The court, on a motion in arrest of judgment, held the writing to be a bond, saying that the word "oblige" is not necessary to make a bond, for if one under hand and seal acknowledge himself to be indebted it is enough to bind him. No particular words are essential to make a writing under seal obligatory, provided it contains words either acknowledging an indebtedness or binding the maker to pay a debt. There are none such in this paper. Except the words, "which amount she states I have received as belonging to her," the language of the paper is purely testamentary, without a word indicating obligation, liability or duty. The addition made in 1871, it is admitted, is purely testamentary in its character. It contains no words denoting obligation or liability. If we expunge the words above quoted the paper will read in this wise :

"After my decease, and as soon as I am buried, I hereby direct my executors to pay to my wife Hannah Chetwood the sum of $5,000. And should she not survive me then my wish is that the same sum of $5,000 be paid to her executors (after my decease) for the benefit of her heirs."

It requires no argument to show that a paper thus framed is, in both its form and substance, a will. The direction to his executors to pay is a pure act of bounty, and a paper in the form above given would, it is manifest, be without the slightest trace of a purpose or intention on the part of its author to admit a liability or to take on himself an obligation. So far, the question as to the effect which should be given to the paper, is, in my judgment, free from the least doubt.

But the words, "which amount she states I have received as belonging to her," are in the paper and form a very important part of it. The court must, therefore, decide what effect shall be given to this paper with those words in it. If the paper, construed as a whole, can properly be regarded or understood as an admission by Dr. Chetwood that he had received money belonging to his wife, to the amount stated, it would seem to be entirely clear that the complainant is entitled to a decree, for the principal is settled in this state that where a husband receives the principal of his wife's separate estate he is bound to account to her for it. If he denies liability, the mere fact that he has received her money will put upon him the burden of showing that he has appropriated it according to her direction, or that she gave it to him; and if he fails to do either, he will be adjudged to be liable. *Vreeland* v. *Vreeland, 1 C. E. Gr. 512; Horner* v. *Webster, 4 Vr. 387; Black* v. *Black, 3 Stew. Eq. 215.* In the case first cited, it will be observed that it was held by Chancellor Green, sitting as Ordinary, that a wife was entitled to reclaim, as against her husband's administrator, money which her husband had received for her, and which he subsequently invested on mortgage in his own name. There is no admission in direct terms in this paper, but it is not indispensable to the creation of a liability that there should be. If what Dr. Chetwood said, can, when all his words are considered, be fairly understood to be an admission that he had received money belonging

Wood v. Chetwood.

to his wife—if it can be clearly discerned that that is what he meant, and what his wife understood—then it is the duty of the court to read the paper as admitting a liability. And, in searching for Dr. Chetwood's meaning, it should be remembered that the paper is his handiwork; he selected its language, and if, in his choice of words, he has left his meaning in doubt, under the general rule prevalent in such cases, that construction must be adopted which is least favorable to him.

The language of the paper renders it quite certain that Mrs. Chetwood had asserted a claim against her husband for moneys, which he had received, and which she claimed belonged to her, and it is equally certain, I think, that Dr. Chetwood delivered the paper to his wife to satisfy her that her claim would ultimately be paid. She undoubtedly understood the paper to be a recognition of her claim, and for that reason desisted from the further pursuit of it, and he, because she so understood the paper, was relieved from all further pester respecting the claim. The question is not what is the legal effect of the paper, as proof of an express contract—that is so clear as to be free from all doubt—but the question is, What does the paper say respecting the claim which Mrs. Chetwood had asserted against her husband? Does it admit, or deny, her claim? Now, I think, what Dr. Chetwood said by the paper may be accurately paraphrased as follows: My wife says I have received money belonging to her; I do not deny what she says; I will not, however, return the money to her now, but I will direct my executors to do so, immediately after my death. Or, if we put it in a form more favorable to the defence, it will read: My wife says I have received money belonging to her; I do not say anything; I will not, however, pay her now what she claims I owe her, but I will direct my executors to do so, immediately after my death. This is what, it seems to me, the paper, in substance, says; and whether we adopt the one form of expression or the other, it is clear that what the author of the paper meant, by his direction to his executors to pay, was to recognize his wife's claim, but to put its recognition in such form as would relieve him from the duty of making payment during his life. There can be no doubt that

Dr. Chetwood executed the paper with a purpose, and it must be assumed that his purpose was an honest one. The court should not, in the absence of proof, presume that he meant to delude and deceive his wife, and that when he delivered the paper to her he intended to give her something which would induce her to give up the further pursuit of her claim, under the belief that its ultimate payment was sure, but which he knew would turn out to be worthless when an attempt should be made to enforce it. Such a purpose cannot be attributed to him, without placing a stigma upon his memory. I think it should rather be believed that he meant what the paper plainly says, namely, that if his wife would wait for the payment of her claim, until he was dead, he would make provision that it should be paid. The form in which he said this does not, in my judgment, amount to an express contract to pay her claim, but it does amount to an admission of her claim, from which the law will imply a promise to pay. This is the substantial ground of the complainant's right of action, and it is, in my opinion, sufficient to support a decree.

No consideration need be given to the question of interest. No claim for interest is made, except from the date of Dr. Chetwood's burial. Interest from that date will be allowed. The complainant is entitled to a decree.