(NOTE — The italics used throughout this opinion are the court's.)
The bill is for a decree directing the defendant to pay to the complainant arrearages of support moneys accrued under the terms of a separation agreement of the parties. When the bill was filed a suit for divorce by the husband against his wife was pending and the final decree for divorce on the ground of adultery was entered therein on December 14th, 1935. Subsequent to the entry of that decree, the complainant amended her bill, reciting the decree of divorce and demanding payment of arrearages accrued to the date of said decree. The amount of the accrued arrearages is not in dispute, nor is there any question touching the fairness of the agreement itself, or the manner in which it was obtained, but the defense is that the court of chancery is without jurisdiction to specifically enforce the separation agreement, relying on Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529; SecondNational Bank v. Curie, 116 N.J. Eq. 101; Aiosa v. Aiosa,119 N.J. Eq. 385, and Phillips v. Phillips, 119 N.J. Eq. 462.
Defendant also claims that complainant's remedy, if any, is at law, and that the subsequent unchastity of the wife determined by the final decree of divorce absolves him from liability under the agreement. But a contract between husband and wife is void at law (Wood v. Chetwood, 44 N.J. Eq. 64; Buttlar v. Buttlar,71 N.J. Eq. 671) and the separation agreement here involved was not contingent upon the continued chastity of the wife, and under such circumstances her subsequent unchastity is no defense to a suit on the agreement. Thomas v. Thomas, 104 N.J. Eq. 607;Sabbarese v. Sabbarese, 104 *Page 301 N.J. Eq. 600; affirmed, 107 N.J. Eq. 184. And, rightly understood, I do not consider the decisions relied upon by the defendant a bar to the relief sought. It is important to note that the present bill does not seek the specific future performance of the separation agreement, but only a money decree for the amount due under the terms of that agreement at the date of the entry of the final decree of divorce.
The real difficulty in the instant case arises from what I believe to be a misconception of the purport of the decisions relied upon by the defendant, and as to which there seems to be some uncertainty at the bar. See article by Alfred C. Clapp, entitled "Marital Separation Agreements," 59 N.J.L.J. 105
(issue of March 26th, 1936). But, in my judgment, this misconception arises from the fact that in the opinions of the appellate court, in the four cited cases, clarity, unfortunately, has been sacrificed to brevity. It can hardly be supposed that our court of last resort intended by those decisions to alter the settled law of this state, as exemplified in its own decisions, and in those of the subordinate courts of both law and equity covering a period of more than a century prior to Apfelbaum v.Apfelbaum, which was decided in 1932. It had previously been held by these courts that while agreements to separate would notbe enforced, yet provisions for the support of the wife containedin such agreements would be enforced if fair and just. Emery v.Neighbour (1824), 7 N.J. Law *142; Calame v. Calame
(Court of Errors and Appeals, 1874), 25 N.J. Eq. 548;Aspinwall v. Aspinwall (Court of Errors and Appeals, 1892),49 N.J. Eq. 302; Buttlar v. Buttlar (Court of Errors andAppeals, 1898), 57 N.J. Eq. 645; Streitwolf v. Streitwolf
(Court of Errors and Appeals, 1899); 58 N.J. Eq. 570;Mockridge v. Mockridge (Court of Chancery, 1901), 62 N.J. Eq. 570; Buttlar v. Buttlar (Court of Chancery, 1906),71 N.J. Eq. 671; Halstead v. Halstead (Court of Chancery,1908), 74 N.J. Eq. 596; Rennie v. Rennie (Court ofChancery, 1915), 85 N.J. Eq. 1; Boehm v. Boehm (Court ofChancery, 1917-1918), 88 N.J. Eq. 74; Hollingshead v.Hollingshead (Court of Chancery, 1919, 1920), 91 N.J. Eq. 261; Whittle v. Schlemm (Court of Errors and Appeals, 1919),94 N.J. Law 112; Sobel v. *Page 302 Sobel (Court of Errors and Appeals, 1925), 99 N.J. Eq. 376;Biddle v. Biddle (Court of Chancery, 1929), 104 N.J. Eq. 313; Patton v. Patton (1904), 58 Atl. Rep. 1019. Certainly such intent cannot be attributed to the court in the absence of an express disapproval of the existing law, and a definite repudiation or overruling of its decisions establishing that law.Graves v. State, 45 N.J. Law 203; State v. Taylor,68 N.J. Law 276, 279; Bowman v. Freeholders of Essex, 73 N.J. Law 543,547; Jersey City v. Blume, 101 N.J. Law 93, 95. That it was unaware of those cases is inconceivable. That it intended to repudiate them without even mentioning them is unbelievable.
One of the earliest cases touching this subject is Emery v.Neighbour (Supreme Court, 1824), supra. In that case, pursuant to a separation agreement signed by the husband and wife, but not by the trustees therein named, a certain sum of money was placed in the hands of the named trustees for the exclusive use of the wife for her support and maintenance. The wife died and disposed of the balance of the fund by will. Her administrator cum testamento annexo brought an action of debt against the trustees and judgment was entered for the plaintiff. Ford, J., said that two questions were presented — first, whether the parties to the agreement "are so bound by law to fulfill the contract that a court of equity would decree specific performance," or, second, "a court of law [would] award damages for the breach of it." It was held that that portion of the agreement providing for separation was void as repugnant to the marriage contract, but that the provision for maintenance was valid and that since the moneys were held by the trustees the suit at law was proper. Judge Ford said:
"I see no necessity for driving these parties into a court ofequity while the same justice can be done between them at law in an action for money had and received, without the prostration of any principle or straining of jurisdiction."
The inference is justified that if a suit for specific performance had been brought by the wife against the husband to compel a deposit of moneys pursuant to the agreement, that portion of the agreement being valid, she would have *Page 303 
been entitled to a decree. At least, the court recognized the enforceability of the agreement in equity so far as its money provisions were concerned. In this connection see the comment by Chief-Justice Beasley in Calame v. Calame, supra, and the more recent case of Braunstein v. Guarantee Trust Co.,114 N.J. Eq. 181, and, also, the proceedings in this court onremittitur in Second National Bank v. Curie, supra, hereinafter discussed.
The next case of importance, and one which has been considered a leading case, is that of Calame v. Calame, supra. That involved an agreement in writing by the husband to give his wife land and money in lieu of her claims for maintenance and it was held enforceable in equity. Chief-Justice Beasley, speaking for the court of errors and appeals, said the practice of enforcing
such an agreement for support, but not for separation, was"absolutely settled and indisputable."
In Aspinwall v. Aspinwall (1892), the bill was by the wife against her husband for the specific performance of a separation agreement which, among other things, provided for the payment of $8 per week by the husband for the support of the wife and children. Chief-Justice Beasley, speaking for the court of errors and appeals, said:
"With respect to the mandate that the moneys and costs in question should be paid for the use of the complainant, this court is of opinion that the decree before us should in all respects be affirmed. These stipulations for the support of the wife, who is living separate from her husband with his assent,have always been regarded as enforceable in a court of equity inthis state. This is plainly manifest from the decisions presently to be cited on another branch of our inquiry. And it would be singular indeed if the court should refuse to carry into effect stipulations of this character, for as there is nothing illegal in the fact of husband and wife living apart by mutual assent, and inasmuch as under such conditions the husband would be liable for the maintenance of the wife, it is difficult to see why equity should not enforce the payment of the sum of money that both parties have agreed to be a reasonable amount for that end. But it is not at all necessary either to labor or to elucidate that point, for *Page 304 
the right to equitable relief by force of agreement of this character is regarded as res adjudicata."
In Streitwolf v. Streitwolf (1899), Adams, J., speaking for the court of errors and appeals (at p. 576), said:
"Again, it is to be remembered that the courts are disposed to recognize and enforce proper agreements inter partes, touching the support of a wife."
In Mockridge v. Mockridge (1901), supra, it was held that where, by articles of separation, a husband covenants to pay to his wife a certain sum per month for her support and she agrees to accept such payments in satisfaction of alimony, she may maintain an action in her own name to recover past due sums. Vice-Chancellor Reed there said:
"The bill is filed to compel the defendant to pay to thecomplainant the amounts already due to his wife by the husband, while living apart from her under articles of separation. * * * While a court of equity will not compel the parties to specifically perform the articles of separation in respect to their future lives, or future maintenance, it will compel thehusband to pay that which he has promised to pay, and which hasalready accrued under the articles. This was the rule established in Aspinwall v. Aspinwall, 4 Dick. Ch. Rep. 302, and in Head v. Head, 3 Atk. 295, a husband living separate from his wife, was compelled, by Lord Chancellor Hardwick, to pay the arrears of amounts promised by him, in a letter to her, for her support."
In the first Buttlar Case, 57 N.J. Eq. 645, Vice-Chancellor Pitney criticised the form of the bill, and (at p. 648), said:
"The question is whether the suit brought by the wife, by such a necessity, in a court of equity, is liable to equitable defenses. It was called, but I think not properly, a suit for specific performance. I think it must be considered as a simple action for money due by contract."
This is the only case I have found, prior to the cases relied upon by the defendant in the instant case, in which the form of the bill (specific performance) was criticised, but the vice-chancellor admitted and considered testimony tending to support the defense of hardship, a defense peculiarly applicable to a bill for specific performance of a contract, and he *Page 305 
denied relief to the complainant on the ground of hardship. On appeal to the court of errors and appeals, the decree was reversed, and Vredenburg, J. (at p. 651), said:
"While separation between husband and wife, in pursuance of mutual articles of agreement, will not be enforced by the decree of a court of equity, such separation being against the policy of our laws (Miller v. Miller, Sax. 391; Aspinwall v.Aspinwall, 4 Dick. Ch. Rep. 302), yet the court will not suffer a husband, who has become possessed of the property of his wife by virtue of such agreement, to avail himself of his own wrong in order to free himself from the duty to maintain her. Even without any such consideration, stipulations in such agreement to paymoney for a wife's support have always been regarded asenforceable in a court of equity in this state. Aspinwall v.Aspinwall, supra; Miller v. Miller, Sax. 386. We agree with the opinion of the learned vice-chancellor who heard the cause in the court of chancery, to the extent that this may be regarded, and, to use his expression, `must be considered as a simple action for money due by contract.'"
At page 656, the court said that the question involved was "will the enforcement of this agreement work any injustice or hardship to the defendant?" The court then proceeded to apply the rules in equity relating to specific performance of contracts, and (at p. 658), said:
"The defense of hardship interposed to the enforcement of the payment by the defendant of the sums of money provided for in the writing, is not sustained."
It will, therefore, be seen that, irrespective of Vice-Chancellor Pitney's criticism of the form of the bill, and of the statement of the appellate court that the suit should be considered as a simple action for money due on contract, the rules relating to the specific performance of contracts were expressly applied (citing Plummer v. Keppler, 26 N.J. Eq. 481) and a decree was entered "in favor of the complainant for the amount due according to the terms of the contract." That is exactly the relief which is sought in the instant case. In the later Buttlar Case (71 N.J. Eq. 671), it was held that *Page 306 
equity has exclusive jurisdiction over contracts between husband and wife and that that jurisdiction extends to their specificperformance. Vice-Chancellor Garrison said (at p. 674):
"Notwithstanding the fact that the parties are no longer husband and wife, it was proper to bring this suit in equity and not at law. This is so because equity has exclusive jurisdictionof contracts entered into between husband and wife. It is not the incapacity of one spouse to sue the other which is controlling but their incapacity at law to make a contract. At law agreements between husband and wife are void, but in equity they will be recognized, and will be enforced if fair and fairly obtained Wood v. Chetwood, 44 N.J. Eq. (17 Stew.)64 (Vice-Chancellor Van Fleet, 1888); affirmed, 45 N.J. Eq.
(18 Stew.) 369; Demarest v. Terhune, 62 N.J. Eq. (17Dick.) 663, at p. 666 (Vice-Chancellor Stevenson, 1901)."
The vice-chancellor criticised the statement of the court of errors and appeals in the previous Buttlar Case (57 N.J. Eq. 645,
at p. 654), that "such a suit is held to be a form of legal proceeding which is carried on in a court of equity merely because the legal right cannot be asserted in the form of a suit at law." The weight of authority seems to support him in this distinction as to the basis of equity's jurisdiction over the enforcement of contracts entered into between husband and wife. And see Woodruff v. Clark, 42 N.J. Law 198.
 Patton v. Patton (1904), supra, was a bill for alimony where the parties were living apart under a separation agreement. Alimony was denied on the ground that jurisdiction of the court of chancery was purely statutory and confined to suits for divorce, nullity and maintenance and that the separation there involved was "without justifiable cause" because the result of a mutual agreement. But Chancellor Magie said:
"The bill asserts, and the proofs show, that the defendant hasnot performed his contract to pay complainant all the sums agreed to be paid, and that there were large arrears due at the filing of the bill. But the bill does not seek for a *Page 307 decree for those unpaid sums upon the footing of the contract,which could be done under the doctrine laid down in Aspinwall * * * and Buttlar * * *."
This was a clear recognition of the right of the complainant to ask a money decree for arrears of support stipulated in the separation agreement.
In Halstead v. Halstead (1908), supra, the separation agreement provided for payment of $7 per week by the husband to the wife. It was held that notwithstanding the institution of a suit for divorce by the wife against the husband the bill could be maintained. Vice-Chancellor Garrison said:
"The bill is filed for the purpose of obtaining a decree against the defendant for money alleged to be due to the complainant by virtue of an agreement between the parties.
"* * * Engagements of this character between husband and wife,must be enforced in a court of equity, because at law, the parties being incapable of contracting, a court of law does not recognize their engagements as legal, and they must, therefore, come into equity to enforce them. A court of equity enforcesthem when and to the extent that it finds that the engagement wasequitable and just. The general principle and the authorities will be found cited in Buttlar v. Buttlar, supra. * * *
"I can see no reason why this agreement should not beenforced up to and including the date when the order in the divorce suit was obtained awarding the wife temporary alimony. I do not think it should be enforced against the husband during the time that the order for temporary alimony is operative."
In Sobel v. Sobel, supra, Mr. Justice Kalisch, speaking for the court of errors and appeals, said:
"It has already been observed that a court of equity willenforce a provision of a contract made in favor of the wife, andCalame v. Calame, supra, illustrates the view that where such a provision has been made by the husband, it will be enforced
in a court of equity."
In Rennie v. Rennie (1915), supra, Chancellor Walker said: *Page 308 
"While doubtless, the separation agreement between the parties * * * may be specifically performed, as in Aspinwall v.Aspinwall * * *."
Biddle v. Biddle (1929), was a bill "for enforcement of a separation agreement * * * recovery of the amount due is sought." On a petition for support and counsel fee pendentelite, Vice-Chancellor Leaming dismissed the petition on the ground that the jurisdiction of the court of chancery in alimony matters is purely statutory * * * by section 25 of the Divorce act as an incident to a suit for divorce or nullity, and by section 26 in a suit for maintenance. The bill (not the petition) in that cause was neither for divorce nor nullity, but one for recovery of arrearages under the separation agreement. Vice-Chancellor Leaming said:
"No doubt can be said to exist touching the right of thiscourt to entertain the bill for the recovery of the payments dueunder the terms of the separation agreement. The agreement is between the parties without the intervention of a trustee and is in full force and effect, since neither party has sought its abrogation or in any way repudiated its obligations, except as to the default of the husband in making the payments stipulated," citing the Buttlar, Whittle v. Schlemm, Aspinwall andHalstead Cases. Notwithstanding dismissal of the petition, an allowance for "suit money" was made on the authority of Marker
v. Marker, 11 N.J. Eq. 256. If it be said that this comment wasobiter, it may also be said that comment from such an astute and distinguished jurist is entitled to the greatest of respect.
In Thomas v. Thomas (1929), the husband filed a petition for divorce and the wife counter-claimed for arrearages under a separation agreement "asking decree for installments past due and for future performance." Vice-Chancellor Buchanan said:
"As to the counter-claim, it is the law in this state that adultery by the wife is not legal justification for refusal by the husband to pay support to her under a separation agreement — unless in such agreement the promise of payment is conditional upon the wife remaining chaste. The agreement in the instant case contains no such provision. The wife is, *Page 309 
therefore, entitled to the monthly installments [$250 per month] from August, 1927, until the decree of divorce, which will terminate liability for further payments under the agreement."
The decision was unanimously affirmed by the court of errorsand appeals. The case is essentially on all fours with that now before the court, although the relief there sought was by way of counter-claim in a divorce action. To the same effect isSabbarese v. Sabbarese, supra, although relief was denied the wife because the agreement was induced by fraud — concealment of prior adultery.
In Dennison v. Dennison, 98 N.J. Eq. 230, it was held that equity "has complete and exclusive jurisdiction over contracts between husband and wife, and this extends to their specificenforcement;" that where enforcement is sought by the husband the burden is upon him to show its fairness and that where he resists its enforcement, the burden is likewise upon him.
The bill in that case was for specific performance of an agreement to pay alimony and counsel fees made by the parties while husband and wife, and pending suit for divorce. The agreement was made in Pennsylvania. After final decree in the divorce suit the husband defaulted. The agreement provided for payment of $25,000 in lieu of alimony and counsel fees, $5,000 down and $2,500 annually for eight years. The $5,000 was paid and the installment falling due January 19th, 1923, was also paid. The defendant refused to pay the installment falling due January, 1924. The cause was heard before me and I held the bill maintainable in the court of chancery and decree was entered for the complainant directing payment of installments already accrued. The decision was unanimously affirmed by the court of errors and appeals on the opinion in the court of chancery.
In Braunstein v. Guarantee Trust Co., supra, pending suit for maintenance, the complainant wife and defendant husband orally agreed to the payment of a stipulated sum monthly and a deposit of certain stock as security and that the agreement should be incorporated in the final decree in the cause. Before the entry of such decree the defendant husband died. *Page 310 
His widow thereafter filed a bill for specific performance of the oral agreement. The bill was dismissed because the agreement was not complete in that it had not been reduced to writing as contemplated nor incorporated in the final decree, the maintenance suit having abated by the death of one of the parties. The court of errors and appeals affirmed upon the opinion of Vice-Chancellor Ingersoll, who cited and quoted from my opinion in the Dennison Case. The appellate court had already, by its affirmance of that decision, adopted the quoted language as its own.
In Mayhew v. Chapman, 116 N.J. Eq. 254, decided by Vice-Chancellor Lewis on June 14th, 1934, nearly two years after the decision of the court of errors and appeals in the ApfelbaumCase, an agreement for support in lieu of alimony entered into pending divorce proceedings was involved. The vice-chancellor said (at p. 256):
"The law of this state is entirely too well settled to require the citation of any authorities, that an agreement by a husband to support his wife will be enforced in a suit in the court of equity for specific performance."
The decree of the court of chancery was unanimously affirmed by the court of errors and appeals. 117 N.J. Eq. 27. In a percuriam opinion that court said:
"It is proper to note our reservation of concurrence in two minor propositions in the opinion below, which do not affect the result. The first is that an agreement by a husband to support his wife will be enforced by way of specific performance. As to this, see Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529."
Except for this comment by the court of errors and appeals it would be idle to mention this decision of the court of chancery, as it is in line with the decisions of this court for a century theretofore; but the comment does not accurately express the decision in the Apfelbaum Case, as I shall hereinafter attempt to show, and in any event it has no application to the instant case because the Mayhew Case is readily distinguishable in that there the agreement was one touching technical alimony and was entered into pending a divorce proceeding, apparently without the approval of the court. *Page 311 Sobel v. Sobel, supra; Dreier v. Dreier, 101 N.J. Eq. 342.
The agreement here involved was made prior to the institution of divorce proceedings. It is a separation agreement which, among other things, provides for separate support and maintenance, as distinguished from an agreement solely concerning alimony. But as to this, see the later discussion herein of the Apfelbaum Case.
So much for the law of this state prior to the ApfelbaumCase. The court of chancery in England has always decreed specific performance of separation agreements in so far as they provided for separate support and maintenance. Rex v. Mead
(1758), 2 Keny. 279; 96 Eng. Rep. 1182; 1 Burr. 541;97 Eng. Rep. 440; Fletcher v. Fletcher (1788), 2 Cox Eq. 99;30 Eng. Rep. 46; 3 Bro. C.C. 619; 29 Eng. Rep. 731; Guth v. Guth
(1792), 3 Bro. C.C. 614; 29 Eng. Rep. 729, and see the cases collected and discussed in Wilson v. Wilson, 14 Sim. 405; 60Eng. Rep. (Full Reprint) 415-419. There can be no doubt but that under the New Jersey decisions prior to the ApfelbaumCase, hereinbefore discussed, the wife, a party to a separation agreement, was entitled to maintain a suit in this court against her divorced husband for recovery of accrued arrearages of support stipulated in such an agreement. It remains to be seen whether or not that rule of law, said by Chief-Justice Beasley, in Calame v. Calame, supra, to be then "absolutely settled and indisputable," has been changed by the decisions relied upon by the defendant, or was intended so to do. To answer this inquiry requires a thorough understanding of what was involved in these four cases.
In the Apfelbaum Case, Vice-Chancellor Backes had dismissed the bill stating that equity would not enforce the alimony clause of a separation agreement therein involved because that was enforceable at law. On appeal, the court of errors and appeals considered this statement as being unnecessary to the decision and declined to approve it, but affirmed the decree of dismissal. In considering the statement of Vice-Chancellor Backes that the agreement was enforceable at law, it must be borne in mind that the agreement was entered into long after the marital status had terminated and the legal *Page 312 
impediment to a contract between the parties cognizable at law had been removed. There a final decree of absolute divorce was entered in 1915 which provided for permanent alimony at the rate of $15 per week. In 1926, eleven years later, the parties agreed upon alimony at the rate of $40 per week. Subsequently the defendant, the former husband, arbitrarily reduced the payments to $25 per week, whereupon specific performance of the agreement to pay $40 per week was sought. It is important to note that this agreement was, in effect, a modification of the previous decree of the court of chancery and the relief sought was for all practical purposes the enforcement of that decree as so modified. The reasons for the affirmance of the dismissal of the bill of complaint are best stated in the per curiam opinion of the court of errors and appeals, as follows:
"The contract of which specific performance is sought was in its essence a contract to pay alimony; and our decisions hold uniformly that alimony is a subject specifically committed to the court of chancery and arising from the present or past status of the parties as husband and wife. The jurisdiction not only exists while that relation persists, but by the express language of the Divorce act (Comp. Stat. p. 2035 ¶ 25), continues after decree of divorce; and it necessarily includes the power, in cases where the wife is entitled to alimony, to regulate the amount of such alimony from time to time, to supervise agreements between the parties in that regard, to enforce themif deemed just, and to decline to recognize them otherwise.Calame v. Calame, 25 N.J. Eq. 548. But these powers grow out of the existing or pre-existing marital status, and are not controlled by the rules of specific performance of contracts.The bill in this case being framed as a bill for specificperformance, was properly dismissed as such, and the decree will accordingly be affirmed, but without prejudice to an application for suitable alimony, on which application the wife may legitimately ask the court to recognize the agreement as a basis for its award, and the court will recognize it or not as it thinks proper."
In considering the meaning of this language it is necessary to bear in mind that the term "alimony" is a technical word *Page 313 
and that the right to alimony is entirely statutory, enforceable only in equity (by statute) as an incident to a suit for divorce or nullity, or in a suit for maintenance. Biddle v. Biddle,supra. 2 Bish. Mar. D. (4th ed.) § 488; 2 Bish. § 351, thus defines alimony:
"Alimony, as the term is used in divorce law, is the allowance which a husband, by order of court, pays to his wife living separate from him, for her maintenance; or, it may be the provision which is made by the court for the sustenance of a wife divorced from the bond of matrimony, out of her late husband's estate — this latter branch of the definition, however, being a matter which pertains only to the modern law, not to the ancient. The allowance may be for her use either during the pendency of a suit, in which case it is called alimony pendente lite, or after its termination, called permanent alimony. It has no common law existence as a separate independent right, but, wherever found, it comes as an incident to a proceeding for some other purpose, as for a divorce; no court in England having any jurisdiction to grant it where it is the only relief sought."
And for a full discussion of the origin and history of alimony see Lynde v. Lynde (Court of Errors and Appeals, 1902),64 N.J. Eq. 736, from which it will appear that alimony in this state is purely a creation of statute "imposed as a personal duty upon the husband for the personal benefit and support of the wife, or of the wife and children," and that "the statutory scheme is modeled closely after the practice of the ecclesiastical courts of England with reference to alimony."
On the other hand, the right of a wife to support and maintenance by her husband is a common law right arising out of the marital status. That right is also enforceable in equity for reasons fully stated in the decisions already discussed. The right to certain stipulated payments for support, under the terms of a separation agreement, is purely a contract right. The right to alimony arises only under a court order decreeing "money payments of the character of an annuity." Calame v. Calame,supra. It is a purely personal right and not in any sense a property right. Lynde v. Lynde, supra. On the other hand, contract rights are property rights. This distinction was pointed out by Chief-Justice Gummere, speaking *Page 314 
for the court of errors and appeals, in Adams v. Adams,80 N.J. Eq. 175. At page 180 of the report the chief-justice said:
"In the Aspinwall Case the complainant sought to compel the performance of a contract previously entered into by herself and her husband, one of the provisions of which required the payment of a certain sum of money by him to her at stated intervals. In the present case, the bill was filed to compel the performance by the defendant of the marital duty which he owed his wife of providing for her support. The contract between them, made upon the hearing, did not create the obligation, but merely liquidated the amount of money which he should pay her from time to time in discharge thereof."
The distinction was also recognized by Chancellor Walker inRennie v. Rennie, supra, when he said: "The wife may elect to apply for alimony rather than to enforce the agreement." In theAdams Case the relief sought was the enforcement of a decree of the court of chancery for the payment of alimony * * * the amount of which had been agreed upon by the parties and approved by thecourt. I think it is clear that by this distinction the court of errors and appeals indicated that the appropriate proceeding for the enforcement of the provisions for support contained in separation agreements is by bill for specific performance as in the Aspinwall Case; but that to enforce the support provisions of a divorce or maintenance decree of the court of chancery, the proceedings should be for contempt. And see Aspinwall v.Aspinwall, 53 N.J. Eq. 684. As already suggested, the jurisdiction of the court of chancery in alimony matters is purely statutory; but the court has inherent jurisdiction over all contracts between husband and wife. Wood v. Chetwood,supra; Woodruff v. Clark, supra. The Apfelbaum Case presents a clear example of the court's exercise of this statutory jurisdiction; and Aspinwall v. Aspinwall, supra, no less an example of the exercise of its inherent jurisdiction. At common law the legal right of the wife to support and maintenance was enforceable only in the ecclesiastical courts and not in courts of law or of equity. 2 Bish. Mar. D. (4th ed.) § 353. For a full discussion of the technical signification of the word "alimony" *Page 315 
see Lynde v. Lynde, supra (at pp. 750, 751). Obviously, what the court had under consideration in the Apfelbaum Case
was technical, statutory alimony, as distinguished from the right of the wife to support by the husband arising from an express contract. The statement of the court that the jurisdiction includes the power to regulate the amount of alimony and to supervise agreements between the parties and to enforce them if just and to decline to enforce them if otherwise, and the citation of Calame v. Calame, supra, is to my mind a clear indication that the appellate court had no intention of repudiating prior decisions of the courts of this state touching the enforcement of such agreements. The iniquity of the bill arose from the attempted usurpation by the parties of the court's prerogative of determining the amount of alimony to be paid. Since the subject of alimony had been committed to the court by statute, and the court had actually assumed jurisdiction over the marital affairs of the parties, it very properly insisted upon recognition of this statutory authority by them and refused to give effect to an alimony agreement which had not been submitted to the court for its approval. See Dreier v. Dreier, supra;Greenberg v. Greenberg, 99 N.J. Eq. 461. As I understand theApfelbaum Case it decided only that alimony is a subjectspecifically committed to the court of chancery and that anyagreement concerning alimony entered into between the parties toa divorce proceeding, without the approval of the court, isevidential only and cannot be the subject of specificperformance. Considering that the statutory jurisdiction of the court had been invoked in the divorce proceeding, it was mandatory upon the court to require the statutory procedure. If I am correct in my interpretation of this decision, it is clearly distinguishable from the instant case and readily reconcilable with the previous decisions discussed. It is also distinguishable from Dennison v. Dennison, supra, in that the parties to the agreement there involved were non-residents when the agreement was made, and they did not invoke, and could not have invoked, the statutory jurisdiction of this court touching alimony. Relief was sought under the inherent jurisdiction of the court over contracts between husband and wife. Woodruff v. Clark, supra. *Page 316 
The Phillips Case is the last decision of our court of last resort touching the point involved in the instant case, but, because of its almost complete analogy to the Apfelbaum Case, will be considered at this point. There the bill was for thespecific performance of an agreement for support and maintenance (entered into pending a suit for divorce) and sought also a decree for arrears. The answer and counter-claim challenged the fairness of the agreement with respect to its provisions for support and also charged that it was collusive. The third defense was that the court of chancery was without jurisdiction to decree specific performance. The appellate court confined its discussion to the third defense and on authority of its three previous decisions. Apfelbaum, Curie and Aiosa, reversed the decree of the court of chancery striking that defense. The pertinent facts are thus recited by Mr. Justice Donges, speaking for the court of errors and appeals:
"It appears that the parties were married on October 11th, 1905, and lived together until April, 1919, when the wife alleges her husband deserted her. On June 14th, 1924, she filed her petition in the court of chancery for divorce on the ground of desertion. On November 14th, 1924, the parties entered into a written agreement providing for the payment of $10,000 annually to the wife, and for the payment of certain sums upon the entry of a final decree of divorce, and upon certain dates thereafter."
Thus it will be seen that the parties had invoked the statutory jurisdiction of the court in the divorce proceedings and the case is, for all practical purposes, on all fours with the ApfelbaumCase. It is clearly distinguishable from both the Curie and the Aiosa Cases, and the cases prior to the Apfelbaum Case
hereinabove discussed, for the reasons set forth by Chief-Justice Gummere in Adams v. Adams, supra. What I have already said about the Apfelbaum Case is equally applicable here. It ought also to be noted that the court of errors and appeals delivered two opinions in the Phillips Case, one reported in 119 N.J. Eq. 462,
and the other in 119 N.J. Eq. 497. The two decisions represented by these opinions were apparently upon two separate appeals, one by the wife and the other by the husband. In the first, the decision in *Page 317 Apfelbaum Case was merely reaffirmed; but in the second decision, the court unanimously affirmed an order of the court of chancery denying the wife's motion to strike out the first defense to her bill — which was that the agreement was void because it was the result of collusion. The court concluded that the defense under attack "raised a fact issue, the truth of which could not be determined from affidavits alone but required a final hearing." From this decision I think it is evident that the court of errors and appeals still recognizes equity's jurisdiction to grant relief in cases of this type when the proper procedure is followed, and that the court had no intention to thereby repudiate its previous decisions; otherwise why should the court say, as here, that a final hearing was required? Obviously there could be no final hearing by a court which had no jurisdiction. If I have correctly interpreted the Apfelbaum andPhillips decisions, they are, I think, reconciled withAspinwall v. Aspinwall, and kindred cases.
This brings us to Second National Bank v. Curie. The peculiar and unusual circumstances attending that case entirely justified its final disposition, but, without some clear expression by the appellate court to that effect, I do not think it can be confidently said that that court intended by that decision to repudiate its former decisions touching the enforcement of provisions for support of a wife by a husband incorporated in a separation agreement. There the court had before it a trust agreement of a husband for the benefit of his wife. The parties were residents in New York and not divorced. They actually resided together in the same home with their children. The suit was primarily between the trustee complainant and the donor and the principal beneficiary (husband and wife) as defendants; and the prayer of the bill was for the advice of the court touching the duties of the trustee and the rights of the parties defendant. The real controversy was between the husband donor and the wife beneficiary; and the wife counter-claimed for specific performance. The agreement provided for the deposit of securities sufficient to produce an income of $12,000 per year, and securities worth $235,000 were originally deposited with the *Page 318 
trustee. The income from these securities in 1932 declined to $7,633 and the trustee sought to compel the husband to deposit additional securities sufficient to produce the required income. The court held that the trust agreement was valid and that it was in essence and purpose an agreement for the reasonable and suitable support of the wife according to her situation and according to her husband's means and ability to support her, and that as such it was not the subject of specific performance; and the chancery decree, directing the husband to deposit additional securities sufficient to make up the deficiency in the income, was reversed. The appellate court relied upon its previous decision in the Apfelbaum Case; but if I have correctly interpreted that decision, it is plain that it is not authority for the appellate court's reversal of the chancery decree. In reversing, the appellate court said:
"The third and fourth points are that paragraph 10 * * * is in effect a contract between husband and wife, and is not fair and just; and that the court of chancery erred in decreeing specific performance of the trust agreement. We take the view that the agreement in these aspects was in its essence and purpose an agreement for the reasonable and suitable support of the wife according to her station and according to her husband's means and ability to support her, and that it comes therefore under the general class of agreements for maintenance where husband andwife are living apart and, as such, is subject to the control of the court of chancery, but not by way of specific performance.Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529. The agreement itself may be regarded by the court as evidential with regard to the amount of money to be paid, though not controlling in that regard."
Upon the record being remitted, further proceedings were had in the court of chancery and in an unreported opinion dated May 29th, 1935 (docket 91, page 154), Vice-Chancellor Bigelow said:
"As I understand the directions of the appellate court, I should consider whether the contract was fairly obtained and was fair in its terms, whether any circumstances have arisen which make enforcement inequitable, and whether and to what extent the court in the exercise of a sound discretion, should decree performance." *Page 319 
The vice-chancellor found that the agreement was fair and that the changes in the husband's circumstances did not constitute an equitable defense; and directed that securities be added to the trust as required by the covenant.
In considering the decisions of the appellate court, it is important to bear in mind that, that parties being non-resident, the wife had no statutory right of action against her husband for alimony or maintenance in New Jersey. When the bill was filed by the trustee the inherent, not the statutory, jurisdiction of the court was invoked; and I think a clear understanding of the facts and the provisions of the trust agreement involved will demonstrate that the trust indenture does not fall into thegeneral class of agreements of which the agreement in theApfelbaum Case is an example.
Tested by the definition of alimony in Bish. Mar. D., andLynde v. Lynde, supra, the subject-matter of the Curie
agreement is not alimony. The agreement contemplated much more than mere support and maintenance. It contained provisions which ordinarily would be found in a will and it was no doubt intended as a substitute for a will and as greater security for the wife. The rights which the wife sought to obtain in this action were not statutory personal rights, but property rights arising out of the contract. The agreement involved was essentially one between husband and wife, void at law, cognizable only in equity, and governed entirely by equitable principles. In determining the rights of the parties thereunder it was obviously incumbent upon the court of chancery to apply the equitable principles set forth in Woodruff v. Clark, supra, and Dennison v. Dennison,supra, and this involved a determination not only of the fairness and justness of the contract so far as the wife was concerned, but also the application of those equitable principles which are peculiarly pertinent to a suit for specific performance. In effect, the court of errors and appeals held that Mrs. Curie's counter-claim could be maintained although the contract, so far as it provided for her support, was "within the discretionary regulation of the court of chancery." Relief by way of specific performance is not a matter of right, but rests in the sound discretion of the court and it is not dependent upon *Page 320 
the court's arbitrary pleasure. King v. Morford, 1 N.J. Eq. 274; Degheri v. Carobine, 102 N.J. Eq. 264. It was in the exercise of this discretionary power that specific performance was refused, and an action for money due on contract suggested, in Buttlar v. Buttlar; but as the court of chancery will not decree specific performance of an agreement for separate maintenance a futuro, limiting its decree to payments past due, the net result in the Buttlar Case would in any event have been a money decree. The distinction, as a practical matter, is without a difference; but the decree compelling the husband to pay is not alimony. 2 Bish. Mar. D. (4th ed.) § 488.
Equally is it true that the support moneys stipulated in the trust agreement in the Curie Case were not alimony.
But by whatever line of argument we attempt to justify the final disposition of that cause we must not lose sight of the fact that the court of errors and appeals placed the trust agreement in the "general class of agreements" under consideration in the Apfelbaum Case. Assuming, but not admitting, the correctness of that classification, then the decision means no more than that in the Apfelbaum Case, as that decision was relied upon as authority for the decision in theCurie Case. If the Apfelbaum decision was not intended as a repudiation of prior decisions hereinabove discussed, as I have attempted to demonstrate, neither can the Curie decision be so considered.
The next case to be considered is Aiosa v. Aiosa. That involved a separation agreement which, inter alia, provided for the payment of $8 per week for the wife's maintenance and support. After making five payments the husband defaulted and the wife thereupon filed her bill praying "that the defendant be compelled, by the decree of this honorable court, to comply with the terms of said agreement and to pay to the complainant the amount due her, by virtue of its terms." The chancery decree directed the payment of arrearages due at the date of its entry. The court of errors and appeals reversed the court of chancery relying upon Apfelbaum v. Apfelbaum, and Second NationalBank v. Curie. Mr. Justice Donges, speaking for the majority, said: *Page 321 
"The bill * * * is framed as a bill for specific performanceand the decree is for a specific performance of the separation agreement. * * * there was no attempt to show the reasonable needs of the wife or the ability of the husband."
While the court does not mention it, there is one feature of this case which distinguishes it from those cases establishing the applicable rule of law prior to the Apfelbaum Case and that is that the husband had at least attempted, however ineffectively, to put an end to the agreement by his offer and request for a restoration of the conjugal rights and a resumption of the marital relationship. But the appellate court did not rely upon the termination of the agreement by the husband as a basis for its reversal. The defense based upon this distinguishing feature was the real question in the case, and that was left unanswered. The court's only criticism is of the form of the bill. But Mrs. Aiosa did not show a statutory cause of action for divorce or maintenance in the technical sense of that term. There was no suit for divorce or maintenance pending — a circumstance not even mentioned in the opinion of the court — and the contract was not one stipulating alimony (2 Bish. Mar. D., supra) and was not, therefore, in the "general class of agreements" referred to in the Apfelbaum Case. It was a contract the enforcement of which could be had only in the court of chancery under its inherent jurisdiction. Of course, under that jurisdiction it was appropriate to inquire if the contract was fair and fairly obtained; but as to the lack of "attempt to show the reasonable needs of the wife or the ability of the husband" it should be noted that that point had already been stipulated and the court had a right to assume that the provisions for the wife were reasonable. The burden of showing them to be otherwise was upon the husband (Dennison v. Dennison, supra) and the report of the case does not suggest any challenge by him of the appropriateness of the provisions of the agreement in this respect. But again, however inappropriately, the court of errors and appeals placed the Aiosa contract in that "general class" involved in the Apfelbaum Case which was cited as authority for the decision. In the final analysis, therefore, the decision means no more than that in the Apfelbaum Case, *Page 322 
which, as already demonstrated, was not intended as a repudiation of prior established law. The effect of the decision must be measured by the classification of the contract. Whatever the character of that contract, we are bound in the interpretation of the decision to consider it of the character which the court declared it to be. My interpretation of the decision is that it was merely a reaffirmance of the appellate court's decision in the Apfelbaum Case as that is interpreted herein.
I can conceive of but one other explanation of these four decisions relied upon by the defendant, and that is that the iniquity of the bill in the eyes of the appellate court lay in their form. I hesitate to suggest that a mere formal objection to the bill could have influenced the court in those decisions; but the court's statements that "the bill is for specific performance" (Apfelbaum); "the bill * * * is framed as a bill for specific performance" (Aiosa); and "the prayer of the bill is for the specific performance of the agreement" (Phillips), lends support to this view. However, the court of chancery, never having been a "slave to form" (Young v. Weber, 117 N.J. Eq. 242) it is, of course, difficult for an equity judge to understand why, the proper parties being before the court, a decree awarding only that to which the complainant was justly entitled, payment of undisputed arrearages of support moneys, was not entirely proper, particularly in the Aiosa and CurieCases, irrespective of the form of the bill or the prayer for relief. At least since prayers for general relief have been outmoded, it has been the practice of this court to decree that to which the parties are entitled, irrespective of the formalities in pleading, lack of appropriate prayers, or misconception by the parties themselves of the relief to which they might be entitled. Considered as based upon informalities in pleading, these decisions can only mean that "specific performance" of a separation agreement is considered improper; but that "enforcement" sought in a suit "regarded as a simple action for money due by contract * * * a form of legal proceeding which is carried on in a court of equity merely because the legal right cannot be asserted in the form of a suit at law" to the extent of a money decree for the amount of accrued arrearages *Page 323 
(Buttlar v. Buttlar, supra) is still proper — unless, by these decisions, the court of errors and appeals intended to alter the previous law of this state as it had stood for over a century and repudiate its former decisions. Without a plain expression to that end such intent should not be attributed to that court. Nor should we attribute to that court an attempt to do that which obviously it has no power to do. The inherent jurisdiction of the court of chancery is defined and limited by the constitution of the state and that jurisdiction cannot be cut down or further circumscribed except by amendment of that basic law. The cases relied upon by the defendant are no bar to the relief here sought, and I will advise a money decree for the amount of the arrearages accrued at the date of the decree of divorce.